### Richmond

ORESTES CASTANEDA

v.

COMMONWEALTH OF VIRGINIA

No. 1404-86-2

Decided July 5, 1988

COUNSEL

Willis F. Hutchens (Rhonda C. King; Hutchens & Hutchens, P.C. on brief), for appellant.

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General; Virginia B. Theisen, Assistant Attorney General on brief), for appellees.

OPINION

**BENTON, J.** — On this appeal Orestes Castaneda contends that his conviction for possession of cocaine with intent to distribute should be set aside (1) because the state police violated his fourth amendment rights by stopping him on the highway solely on the basis of a drug courier profile, and (2) because the evidence was insufficient to support the conviction. We conclude that Castaneda was unlawfully stopped and reverse the conviction.

Prior to trial, Castaneda filed a motion to suppress the evidence alleging that it was seized in violation of the fourth amendment. The trial judge, sitting without a jury, took the motion under advisement until the conclusion of the Commonwealth's case-in-chief. The Commonwealth's evidence established that V.C. Jones, Special Agent of the Virginia State Police, and several other state police were sitting in their vehicles near the toll gates at Exit 4 on Interstate 95 watching for the appearance of particular suspects in a vehicle from North Carolina. Jones observed a northbound automobile leave the toll booth at the far inside lane next to the concrete barriers that divide the northbound and southbound traffic. He saw the passenger and driver of the automobile turn and look toward the assembled police vehicles. As they looked "the vehicle swerved, almost striking the barrier." Jones stated that when he first saw the automobile swerve, he could not distinguish the complexion of the occupants nor could he read the vehicle's tags.

Jones decided to pursue the automobile. As he approached it south of Exit 6, he "noticed that it had Florida rental tags and a bumper sticker with the words Diaz Rental Car, Miami, Florida." He also observed two dark complexioned occupants in the automobile with no visible luggage. "[B]elieving the car was local only Florida rental" and "based upon things that [he had] . . . heard," Jones decided to stop the vehicle for further investigation.

Jones stopped the vehicle, identified himself, and asked to see Castaneda's driver's license and registration papers. Jones testified:

> [Castaneda] produced them without too much delay and before I could say anything else . . . Castaneda opens the driver's door, gets out, goes right to the trunk of the vehicle, opens it up. There was a bag, like a travel bag, laying in the trunk. He immediately unzips it, and starts emptying it of clothing and other items. . . . and as he was doing this, I said, "Are you giving me permission to search your vehicle?" And his reply, said, "Yes, you search the car." I asked, "Are you carrying any narcotics or contraband?" "No. Search the car," and then I told him, "You don't have to let me search," and he says, "Search the car. No narcotics. I am going to New York."

Jones also asked the passenger, Robert Castro, to step out of the vehicle. As Jones talked to Castro, a second state trooper arrived and searched the car for approximately ten minutes before finding a bag on the back seat. Jones called for a narcotics detection dog. The dog "alerted" on a package underneath the seat which contained 1018 grams of 71 percent pure cocaine. Jones also seized $560 from one part of Castaneda's wallet, but did not seize an additional small amount of money which was separated from the $560 by a leather divider in the wallet. Following his arrest, Castaneda denied knowledge of the cocaine. He further stated that he was going to visit Castro's family in New York and that he was told by the rental agency that he could take the car there.

At the close of the Commonwealth's evidence, defense counsel renewed the motion to suppress the evidence and made a motion to strike the evidence on the basis that the Commonwealth had not proved that Castaneda knowingly and willingly possessed cocaine with intent to distribute. The judge overruled both motions.

Through an interpreter, Castaneda testified that he loaned Castro his credit card to rent the car because Castro needed to go to New York to borrow money from his family. Castaneda stated that he had to sign the rental agreement because it was his credit card and that the person from whom the automobile was rented told him that it could be taken to New York. He testified that he left the rental agency in his wife's automobile. Castro drove the automobile from the rental agency to Castro's house, showered, and then came to his house to begin the trip. In addition to visiting Castro's family, they intended to buy junk cars in New York for their business of selling used auto parts.

Castaneda said that he had lived most of his life in Cuba. He further explained that he opened the trunk and emptied his bag without the officer's request because that was normal procedure when stopped by law enforcement authorities in Cuba. Castaneda was convicted of possession of cocaine with intent to distribute, sentenced to twenty years in the penitentiary, and ordered to pay a fine of $25,000.

In *Taylor v. Commonwealth*, 6 Va. App. 384, 369 S.E.2d 423 (1988), this Court, applying well established principles, held that in the absence of probable cause to arrest, a law enforcement officer who stops and detains the occupants of a motor vehicle for investigation must have a particularized basis for suspecting that the persons are engaging in criminal activity. *See Zimmerman v. Commonwealth*, 234 Va. 609, 612, 363 S.E.2d 708, 709 (1988). "This 'particularized suspicion' is not achieved by the mere presence of drug courier profile characteristics." *Taylor v. Commonwealth*, 6 Va. App. at 388, 369 S.E.2d at 425; *see also Reid v. Georgia*, 448 U.S. 438, 440-41 (1980). The record indicates that Jones stopped the defendant solely on the basis of a drug courier profile and that Jones had no "particularized suspicion" that Castaneda was engaged in criminal activity.

Jones decided to follow Castaneda's automobile when Castaneda swerved to avoid a barrier beside his lane, after having glanced at the assemblage of police vehicles. At the time Jones decided to follow the automobile, the driver had broken no laws. Jones testified that he became suspicious of the occupants merely because the automobile momentarily swerved as the occupants looked at the police vehicles. Neither the driver's behavior at that point nor Jones' articulated reason for following the automobile

provide a basis for reasonably suspecting criminal behavior. In the absence of other conduct or circumstances, turning to view an assemblage of police vehicles is not indicative of criminal behavior. *Cf. Taylor v. Commonwealth*, 6 Va. App. at 389, 369 S.E.2d at 425. Furthermore, Jones' testimony belies any suggestion that he suspected drunk driving or any other traffic violation. He attributed the automobile's swerve to the driver's momentary lack of attention as he looked at the police vehicles.

After following the automobile for several miles Jones concluded that the automobile fit the drug courier profile. He testified that the bumper sticker indicated the automobile was from a local rental company in Florida and that he had learned during a 1984 investigation in Florida that local rental car agencies assessed a substantial extra mileage fee if their cars are taken out of Florida. He stated:

> I saw the Florida tags. I then saw the bumper sticker on the bumper of the vehicle. I pulled up beside it. I saw two occupants, dark complexioned, no visible luggage, like I testified, nothing hanging in the windows, and I decided to stop the vehicle for further investigation, based upon things that I have heard.

He also testified that he "stopped the car to check it to see if there was any problem with it possibly being stolen."

In making an assessment that circumstances indicate that a crime is being committed, a trained law enforcement officer "may identify criminal behavior which would appear innocent to an untrained observer; however, 'any such special meaning must be articulated to the courts and its reasonableness . . . assessed independently of the police officers' subjective assertions.' " *Id.* at 388, 369 S.E.2d at 425 (quoting *United States v. Gooding*, 695 F.2d 78, 82 (4th Cir. 1982)). Jones' stated reason for suspecting that the automobile was stolen does not withstand scrutiny. Although Jones asked his dispatcher for a registration check of the automobile, he stopped the automobile before he received a response. Furthermore, Jones testified that he formed a belief that the vehicle was stolen on the basis of his knowledge that drivers who lease automobiles from local rental companies in Florida are charged substantial extra mileage fees if the automobile is taken out of Florida. Even if we assume that every local rental company

in Florida charges a substantial extra mileage fee for an automobile driven outside the State of Florida, we fail to see how such information reasonably leads to the conclusion that such an automobile being driven in Virginia is stolen. The inferences that Jones drew simply were unsupported by the facts available to him. His suspicion that the car was stolen, which he used as an additional justification for the stop, was not reasonable and was merely an "inchoate and unparticularized suspicion or 'hunch.'" *See Reid v. Georgia*, 448 U.S. at 441. "Neither the drug courier profile nor the officer's other observations provided an objective manifestation that the defendants were or were about to be, engaged in criminal activity." *Taylor*, 6 Va. App. at 389, 369 S.E.2d at 425. The seizure, therefore, was violative of the fourth amendment and the evidence thereby obtained as a result of the seizure is inadmissible.

Having decided that the stop and search were unlawful, we need not address Castaneda's contention that the evidence was insufficient to sustain the conviction. Accordingly, the conviction is reversed and the indictment is dismissed. *See Zimmerman v. Commonwealth*, 234 Va. at 613, 363 S.E.2d at 710.

*Reversed and dismissed.*

Koontz, C.J., concurred.

Cole, J., dissenting.

The standard of review by this court is well established:

> On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.

*Martin v. Commonwealth*, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). In my opinion the majority does not view the evidence in the most favorable light to the Commonwealth nor do they give proper weight to the judgment of the trial court.

Special Agent Jones of the Virginia State Police, the Commonwealth's chief witness, is a well-trained state police officer with twelve years experience, six years of which was as a uniformed state trooper involved in narcotics investigations. He worked as a full-time investigator for the state police and was assigned to the vice and narcotics unit for more than a year. Jones had attended two Drug Enforcement Administration sponsored narcotics schools, and recently had "a three-hour block" of in-service training devoted to narcotics profile stops. He was familiar with the state police manual regarding characteristics of drug traffickers on the highways.

The majority opinion concludes that "Jones' stated reason for suspecting that the automobile was stolen does not withstand scrutiny." The majority declares that "Jones stated that he formed a belief that the vehicle was stolen on the basis of his knowledge that drivers who lease automobiles from local rental companies in Florida are charged substantial extra mileage fees if the automobile is taken out of Florida." The opinion then reasons that "such an automobile being driven in Virginia is stolen" is a *non sequitor*. I disagree with the majority's characterization of the evidence and disagree with their conclusion.

The rental agreement in evidence is unlike any other rental agreement that we have been called upon to review. It is not the usual commercial rental agreement allowing the renter to drive the vehicle only within the state of Florida. Jones explained that, according to his knowledge and past experience in dealing with narcotics investigations in Florida, a "local rental car" from Florida is not supposed to be taken out of the state unless a substantial extra mileage fee is paid and this provision is contained in every rental contract that he was shown in Florida. Paragraph 12 of the rental agreement introduced in evidence states:

VEHICLE SHALL NOT BE DRIVEN OUTSIDE THE STATE OF FLORIDA, OR OTHERWISE REMOVED.

(a) If vehicle is driven out of the State of Florida, a charge of $.50 (fifty-cents) per mile for all miles driven during entire rental period will be in addition to the rates agreed upon by Renter at time of rental.

Officer Jones testified that it made no sense for a person to use a "local rental vehicle" and pay the usual rental charges plus fifty cents extra per mile all the way to New York, when he could rent from a national agency for much less. I believe that a fair interpretation of this information is that the vehicle is not authorized to be driven outside of Florida. If it is, the contract imposes a severe monetary sanction to penalize the occurrence, not to authorize it. It was reasonable for Jones to suspect that this vehicle was stolen, and it was his duty to investigate. The majority opinion disregards the fact that the trial court is the fact finder and substitutes its findings of fact for those of the trial court.

An insert from the Training Manual of the Department of State Police, dated April 30, 1985, upon the subject of Drug Courier Profile Vehicle Stops was introduced in evidence. The directive stated:

In recent years this Department and other state police agencies across the country have begun programs to intercept drug couriers who use public highways to transport illicit substances from one place to another. In this effort to stem the flow of these substances, law enforcement has developed a "profile" composed of a number of characteristics and behaviors which experience has shown are common to drug couriers.

The manual then recites the characteristics which experience has shown are common to persons transporting narcotics or other contraband substances from Florida to centers in the northeast. All of the profile characteristics enumerated by the Department of State Police as common to drug couriers are present in this case. In addition, the occupants in the vehicle were unshaven and carried no luggage or clothes in the vehicle, distinguishing them from most long distance travelers on the highways. Further, the occupants displayed unusual nervousness in the presence of the police officers. The majority opinion states that "[t]urning to view an assemblage of police vehicles is not necessarily indicative of criminal behavior." However, the testimony of Officer Jones was: "I saw the passenger and driver of the vehicle turn around in the seat and look towards us, and when they did that, the vehicle swerved, almost striking the barrier." This conduct by the occupants, to me, is an abnormal reaction to the presence of the police officers,

and is a circumstance to be considered by the officer in deciding whether to stop the vehicle.

In the case at bar, we must examine the totality of the circumstances to determine whether special agent Jones had specific articulable facts that reasonably warranted a suspicion that Castaneda was, or was about to be, engaged in criminal activity. We are not required to determine whether the drug courier profile characteristics alone, or whether the events at the toll barrier alone, or whether the "local license" from Florida, alone, are sufficient to engender a reasonable suspicion that the defendant was engaged in criminal activity. We need only review the whole picture to determine whether the circumstances collectively are sufficient to justify the initial stop for routine questioning. *See United States v. Aguiar*, 825 F.2d 39, 41 (4th Cir.), *cert. denied*, 108 S. Ct. 505 (1987); *United States v. Alpert*, 816 F.2d 958, 960-61 (4th Cir. 1987); *United States v. Harrison*, 667 F.2d 1158, 1161 (4th Cir.), *cert. denied*, 457 U.S. 1121 (1982); *United States v. Corbin*, 662 F.2d 1066, 1069 (4th Cir. 1981).

The majority opinion also states that Castaneda testified through an interpreter at trial. This procedure is acceptable and may have been helpful to the trial judge. The record establishes, however, that he could speak English. Trooper Jones testified that initially he and Castaneda could understand each other, but as the investigation went on, Castaneda understood less and less; by the time the arrest was made, he apparently understood nothing.

The judgment of the trial court sitting without a jury is entitled to the same weight as a jury verdict and must not be set aside unless it appears from the evidence that it is plainly wrong. I would find that there is sufficient evidence in the record to support the trial court's denial of the suppression motion.

I believe that the combination of factors present in this case gave the police reasonable suspicion to justify the initial stop. I would therefore find that the trial court properly denied the suppression motion of the defendant, and affirm the conviction.