**Richmond**

ORESTES CASTANEDA

v.

COMMONWEALTH OF VIRGINIA

No. 1401-86-2

Decided January 17, 1989

COUNSEL

Willis F. Hutchens (William E. Johnson; Hutchens & Hutchens, P.C., on brief), for appellant.

Virginia B. Thiesen, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

## ON REHEARING EN BANC

COLE, J.—In *Castaneda v. Commonwealth*, 6 Va. App. 476, 370 S.E.2d 109 (1988), a panel of this court reversed Castaneda's conviction of possession of cocaine with intent to distribute and dismissed his indictment. We granted the Commonwealth's petition for a rehearing en banc[1] based upon the provisions of Code § 17-116.02(D). The issues on appeal are: (1) whether the investigative stop of the defendant's motor vehicle violated rights guaranteed to him under the fourth amendment of the United States Constitution; and (2) whether the evidence adduced at trial was sufficient to establish beyond a reasonable doubt that he knowingly and intentionally possessed cocaine with intent to distribute. We affirm the decision of the trial court.

I.

On April 23, 1986, V. C. Jones, a special agent for the Department of State Police, and other officers were located approximately 100 yards north of Exit 6 on Interstate 95 near a toll plaza in Chesterfield County. Their purpose was to locate a specific vehicle at the request of the North Carolina Highway Patrol.

Special Agent Jones, the Commonwealth's chief witness, is a well-trained state police officer with twelve years experience, six years of which were as a uniformed state trooper involved in narcotics investigations. He worked as a full-time investigator for the

---

[1] Judge Baker did not participate in this en banc proceeding.

state police and was assigned to the vice and narcotics unit for more than a year. Jones had attended two Drug Enforcement Administration sponsored narcotics schools, and recently had "a three-hour block" of in-service training devoted to narcotics profile stops. He was familiar with the state police manual regarding characteristics of drug traffickers on the highways.

While watching for the appearance of the North Carolina suspect, Jones observed a car leave the toll booth at the far inside lane next to the concrete barriers dividing the northbound and southbound traffic lanes. Castaneda, who was the driver of the vehicle, and his passenger, Roberto Castro, turned around in their seats to look at the officers who were observing traffic north of the toll plaza. As they did this, the car almost hit the concrete barrier, but swerved sharply to avoid the collision.

After observing these events, Jones followed the defendant north on I-95. As he caught up with him, Jones observed that the car had a Florida license tag with a "Z" on it, indicative of a rental vehicle. He also noticed a bumper sticker displaying the name of Diaz Rental Car, Miami, Florida. When Jones pulled up next to the defendant's car, he saw that the sole occupants were two dark-complexioned, unshaven males carrying no luggage or clothes on hangers within the car.

Jones was aware of the fact that the Virginia Department of State Police and other state police agencies across the country had begun programs to intercept drug couriers who use public highways to transport illicit substances from one place to another. He had knowledge that law enforcement agencies had developed a "profile" of such couriers, composed of several characteristics and behaviors which experience has shown are common to drug couriers. He knew that among these characteristics is the use of a rental vehicle bearing Florida registration; that Florida rental vehicles bear the prefix "Z" on the license plate; that frequently the plates indicate registration in Dade or Broward County, Florida; that such vehicles generally contain one or two occupants, frequently Hispanic or black; that they operate the vehicles in an overly cautious manner; and that they exhibit signs of nervousness when they realize they are being observed by police authorities.

Jones further possessed knowledge concerning the Diaz Rental Car bumper sticker on the car. He testified that from his knowl-

edge and past experience in dealing with narcotics cases, and his travel in Florida on these investigations, he was aware that this type of local rental vehicle was not supposed to be taken out of Florida. He had read rental agreements for such vehicles, and knew that if they were taken out of Florida that the renter was required to pay an extra fifty cents a mile from Florida. He testified that "it didn't make any sense to me, why someone would want to do that."

Based upon the erratic operation of the motor vehicle at the toll booth when in the presence of the police officers; upon his having ascertained that a number of characteristics and behaviors which experience had shown were common to drug traffickers were present, indicating that the occupants of the vehicle might be drug couriers; and upon his knowledge that the bumper sticker of Diaz Rental Car indicated a "local rental" vehicle which was not supposed to be taken out of Florida, Jones stopped Castaneda's vehicle to investigate whether the occupants were engaging in any criminal activity. He identified himself and asked to see Castaneda's driver's license and registration papers. Jones testified:

> [Castaneda] produced them without too much delay and before I could say anything else . . . Castaneda opens the driver's door, gets out, goes right to the trunk of the vehicle, opens it up. There was a bag, like a travel bag, laying in the trunk. He immediately unzips it, and starts emptying it of clothing and other items. . . . and as he was doing this, I said, "Are you giving me permission to search your vehicle?" And his reply, said, "Yes, you search the car." I asked, "Are you carrying any narcotics or contraband?" "No. Search the car," and then I told him, "You don't have to let me search," and he says, "Search the car. No narcotics. I am going to New York."

During the search of the vehicle a bag was found on the back seat. Jones called for a narcotics detection dog. The dog alerted on a package underneath the seat. Subsequent tests disclosed that the package contained 1018 grams of seventy-one percent pure cocaine, the equivalent of thirty-two ounces or two pounds. Jones also seized $560 from one part of Castaneda's wallet, but he did not seize an additional small amount of money which was sepa-

rated from the $560 by a leather divider in the wallet. Following his arrest for distribution of cocaine, Castaneda denied knowledge of the presence of the cocaine. He stated that he was going to New York to visit Castro's family.

At the close of the Commonwealth's evidence, defense counsel renewed his motion to suppress the evidence made at the beginning of the trial and moved to strike the evidence on the basis that the Commonwealth had not proved that Castaneda knowingly and willingly possessed cocaine with intent to distribute. Both motions were overruled.

## II.

Castaneda contends that the trial court erred in denying his motion to suppress the cocaine as a result of his seizure and detention because constitutional rights guaranteed him under the fourth amendment were violated. He argues that, absent independent individual indicia of criminal activity, the fact that an individual matches characteristics of a drug courier profile does not provide sufficient cause for an investigatory stop and that no credible evidence exists from which a suspicion of criminal activity can reasonably be inferred. We disagree.

We have had occasion recently to review the law concerning investigatory stops of motor vehicles in two cases, *Taylor v. Commonwealth*, 6 Va. App. 384, 369 S.E.2d 423 (1988)(*en banc*), and *Iglesias v. Commonwealth*, 7 Va. App. 93, 372 S.E.2d 170 (1988)(*en banc*). What was said in those cases is applicable here. The stop of a vehicle on a highway and detention of the driver constitutes a "seizure" within the meaning of the fourth amendment, even though the stop is limited and the detention brief. *Lowe v. Commonwealth*, 230 Va. 346, 349, 337 S.E.2d 273, 275 (1985), *cert. denied*, 475 U.S. 1084 (1986).

In *United States v. Cortez*, 449 U.S. 411 (1981), Chief Justice Burger established the two elements which must be present before a stop is permissible:

First, the assessment must be based upon all of the circumstances. The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation

of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions — inferences and deductions that might well elude an untrained person.

\* \* \* \*

The second element contained in the idea that an assessment of the whole picture must yield a particularized suspicion is the concept that the process just described must raise a suspicion that the particular individual being stopped is engaged in wrongdoing.

*Id.* at 418.

■ There is no "litmus test" for reasonable suspicion. Each instance of police conduct must be judged for reasonableness in light of the particular circumstances. *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

■ Courts must apply objective standards in determining whether the requisite degree of suspicion exists, taking into account that "trained law enforcement officers may be 'able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer.'" *United States v. Gooding*, 695 F.2d 78, 82 (4th Cir. 1982). Attention must be focused on objective reasonableness rather than on the police officer's subjective intent. As the Supreme Court explained in *Terry*:

The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the law can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?

*Terry*, 392 U.S. at 21-22.

In the case at bar, we must examine the totality of the circumstances to determine whether special agent Jones had specific, articulable facts that reasonably warranted a suspicion that Castaneda was, or was about to be, engaged in criminal activity. We are not required to determine whether the drug courier profile characteristics alone, or the events at the toll barrier alone, or the "local rental" license from Florida alone, were sufficient to engender a reasonable suspicion that the defendant was engaged in criminal activity. We need only review the whole picture to determine whether the circumstances collectively are sufficient to justify the initial stop for routine questioning. *See United States v. Aguiar*, 825 F.2d 39, 41 (4th Cir.), *cert. denied*, 108 S. Ct. 505 (1987); *United States v. Alpert*, 816 F.2d 958, 960-61 (4th Cir. 1987); *United States v. Harrison*, 667 F.2d 1158, 1161 (4th Cir.), *cert. denied*, 457 U.S. 1121 (1982); *United States v. Corbin*, 662 F.2d 1066, 1069 (4th Cir. 1981).

The rental agreement in evidence is not the usual commercial rental agreement allowing the renter to drive the vehicle wherever he desires. Jones explained that, according to his knowledge and past experience in dealing with narcotics investigations in Florida, a "local rental" car from Florida is not supposed to be taken out of the state unless a substantial extra mileage fee is paid and this provision is contained in every rental contract that he was shown in Florida. Paragraph 12 of the rental agreement introduced in evidence states:

VEHICLE SHALL NOT BE DRIVEN OUTSIDE THE STATE OF FLORIDA, OR OTHERWISE REMOVED.

(a) If vehicle is driven out the State of Florida, a charge of $.50 (fifty-cents) per mile for all miles driven during entire rental period will be in addition to the rates agreed upon by Renter at time of rental.

Officer Jones testified that it made no sense for a person to use a "local rental" vehicle and pay the usual rental charges plus fifty cents extra per mile all the way to New York, when he could rent from a national agency for much less. A fair interpretation of this agreement is that the vehicle is not authorized to be driven outside of Florida. If it is, the contract imposes a severe monetary sanction to penalize the occurrence, not to authorize it. Jones testified

that based upon his knowledge concerning "local rental" car agreements, he suspected the vehicle might be stolen. We find that this was a reasonable articulable suspicion which justified him stopping the vehicle to further investigate whether it was stolen.

An insert from the Training Manual of the Department of State Police, dated April 30, 1985, on the subject of Drug Courier Profile Vehicle Stops was introduced in evidence. The manual recites the characteristics which experience has shown are common to persons transporting narcotics or other contraband substances from Florida to centers in the northeast. All of the profile characteristics enumerated by the Department of State Police as common to drug couriers were present in this case. In addition, the occupants of the vehicle were unshaven and carried no luggage or clothes inside the vehicle, distinguishing them from most long distance travelers on the highways. Further, the occupants displayed unusual nervousness in the presence of the police officers at the toll plaza.

We find that these specific and articulable facts, when taken together with rational inferences, reasonably warranted the officer in believing that the driver was engaged in criminal activity. Therefore, Jones was justified in stopping Castaneda's vehicle in order to inquire about his identity and to obtain an explanation of the suspicious circumstances. Because the officer's initial contact with Castaneda was constitutionally permissible, we find that the trial court did not err in denying his motion to suppress.

## III.

Finally, Castaneda maintains that the Commonwealth failed to prove beyond a reasonable doubt that he knowingly and intentionally possessed cocaine with the intent to distribute it. He argues that the record is devoid of any evidence that he knew that the package in the vehicle contained cocaine or that he intended to distribute it.

We examine the evidence in accordance with the standard set forth in *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975):

Where the sufficiency of the evidence is challenged after conviction, it is our duty to consider it in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom. We should affirm the judgment unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.

 Further, our review encompasses the following well-established principles. To convict a person of possession of illegal drugs "the Commonwealth must prove that the defendant was aware of the presence and character of the drugs and that he intentionally and consciously possessed them." *Andrews v. Commonwealth*, 216 Va. 179, 182, 217 S.E.2d 812, 814 (1975). Possession may be actual or constructive. *Peterson v. Commonwealth*, 5 Va. App. 389, 402, 363 S.E.2d 440, 448 (1987). Constructive possession exists when "an accused has dominion or control over the drugs." *Andrews*, 216 Va. at 182, 217 S.E.2d at 814. Such "possession may be proved by 'evidence of acts, declarations or conduct of the accused from which the inference may be fairly drawn that he knew of the existence of narcotics at the place where they were found.'" *Id.* (citations omitted).

 In the instant case, the trial court sitting without a jury heard all the evidence and found defendant guilty of possession of cocaine with intent to distribute. Although there was no evidence that cocaine was found on defendant's person, he was in constructive possession of the cocaine which was hidden in the back seat of the car he had rented and was driving. The possession of drugs need not always be exclusive. It may be shared with another. *Archer v. Commonwealth*, 225 Va. 416, 418, 303 S.E.2d 863, 864 (1983); *Gillis v. Commonwealth*, 215 Va. 298, 301-02, 208 S.E.2d 768, 771 (1974). The drugs were in the back seat of the car. When the police officer stopped the car, Castaneda quickly directed the officer's attention away from the car's interior to the trunk. In fact, he opened a zipped duffle bag and began taking the contents out for the officer without being requested to do so. The fact finder could infer that this attempt to draw the officer's attention away from the back seat where the drugs were hidden evinced knowledge of the location of the drugs.

 In determining whether a defendant constructively possessed drugs, defendant's proximity to the drugs and his occu-

pancy of the vehicle must also be considered. Although mere proximity to the drugs is insufficient to establish possession, and occupancy of the vehicle does not give rise to a presumption of possession, Code § 18.2-250, both are factors which may be considered in determining whether a defendant possessed drugs. *See Lane v. Commonwealth*, 223 Va. 713, 716, 292 S.E.2d 358, 360 (1982); *see also Eckhart v. Commonwealth*, 222 Va. 447, 281 S.E.2d 853 (1981). Although at trial defendant claimed that he had only loaned his VISA card to Roberto Castro to rent the car, his signature appeared on the rental agreement. Moreover, at the scene, when Agent Jones asked him if he had rented the car, he said that he had.

■ Castaneda's explanation that his passenger, Castro, had possession of the car before the defendant entered the vehicle could reasonably have been rejected by the trial judge. The credibility of witnesses and the weight accorded their testimony are matters solely for the fact finder, who has the opportunity of seeing and hearing the witnesses. *Schneider v. Commonwealth*, 230 Va. 379, 382, 337 S.E.2d 735, 736-37 (1985); *Carter v. Commonwealth*, 223 Va. 528, 532, 290 S.E.2d 865, 867 (1982). Under the facts and circumstances established by the Commonwealth, the trial court was justified in finding that the defendant was in exclusive possession and control of the cocaine. Therefore, we turn to the issue of intent to distribute.

■ When the proof of intent to distribute narcotics rests upon circumstantial evidence, the quantity which the defendant possesses may indicate the purpose for which it is possessed. *Monroe v. Commonwealth*, 4 Va. App. 154, 156, 355 S.E.2d 336, 337 (1987). Possession of a quantity greater than that ordinarily possessed for one's personal use may be sufficient to establish an intent to distribute it. *Hunter v. Commonwealth*, 213 Va. 569, 570, 193 S.E.2d 779, 780 (1973).

The evidence established that Castaneda was in the exclusive possession and control of 1018 grams of seventy-one percent pure cocaine. In addition, he was transporting the cocaine from Miami to New York on I-95, a recognized route of drug couriers and a circumstance which the trial court can consider in determining the existence of an intent to distribute. Under these circumstances, we hold that the record contains ample evidence to support the conviction of the defendant for possession of cocaine with intent to

distribute.

For the foregoing reasons, the decision of the panel is reversed and we affirm the conviction in the trial court.

*Affirmed.*

Duff, J., Hodges, J., Keenan, J., and Moon, J., concurred.

Coleman, J., concurring.

I concur in the judgment affirming the conviction. However, in my view the reason the investigative stop did not violate the fourth amendment protection against warrantless searches and seizures was solely because the officer possessed specific and articulable facts, based partly on his personal knowledge of the monetary penalty provisions of the Florida local car rental agreements, which, together with reasonable inferences, warranted the suspicion that the automobile might be stolen. *Terry v. Ohio*, 392 U.S. 1 (1968). Although whether an investigative stop is reasonable must be determined from viewing the "totality of circumstances," *see Illinois v. Gates*, 462 U.S. 213 (1983), nevertheless, many of the factors emphasized by the majority, including the defendant's personal features and drug courier profile characteristics, were not relevant to whether there was a reasonable suspicion of criminal activity. There were no facts which, in my opinion, gave rise to a reasonable suspicion that the defendant was transporting drugs. The officer was, however, justified in briefly stopping the car to investigate whether it was illegally removed from Florida because the facts gave rise to a reasonable suspicion of automobile theft.

Benton, J., joined by Koontz, C.J., dissenting.

For the reasons stated herein and in the panel's initial reversal of this conviction, *see Castaneda v. Commonwealth*, 6 Va. App. 476, 370 S.E.2d 109 (1988), I would reverse this conviction and dismiss the indictment. *See also Taylor v. Commonwealth*, 6 Va. App. 384, 369 S.E.2d 423 (1988).

I

Special Agent Jones, of the Virginia State Police, was sitting in his vehicle on the emergency shoulder of Interstate 95 in the vicinity of several other state police vehicles when he "saw the passen-

ger and driver of the vehicle turn around in the seat and look toward us." He testified that "when they did that, the vehicle swerved, almost striking the barrier." On the basis of these observations he "decided [to] . . . go north on 95 and check the vehicle out." He followed the automobile a substantial distance (from exit 4 to "100 yards north of exit 6") before stopping it. He testified that he stopped the automobile because he concluded that it fit the drug courier profile and because he suspected that it was stolen.

The decision to stop the automobile because it fit the drug courier profile and momentarily swerved as the occupants looked at the assembled state police vehicles does not withstand fourth amendment scrutiny. *See Taylor*, 6 Va. App. at 388-89, 369 S.E.2d at 425; *see also United States v. Smith*, 799 F.2d 704 (11th Cir. 1986). The majority concludes that Jones reasonably suspected that the automobile was stolen simply because Jones had learned two years earlier during an unrelated investigation that some local Florida rental companies imposed a substantial mileage fee if their automobiles were driven outside of Florida. The link between Jones knowledge of this information and his observation that the automobile driven by Castaneda was owned by a local rental company does not provide a rational, reasonable, or tenable basis upon which to base a finding of reasonable suspicion that the automobile was stolen. Jones testified as to why this information led him to conclude that the automobile was stolen:

Well, to me, it doesn't seem to be very cost effective, because if he wants to rent a car from a national agency, he can do it cheaper than pay 50 cents a mile extra.

\* \* \* \*

[B]ut it just doesn't make any sense. Why would somebody from Florida want to pay — and that's a long way — 50 cents a mile from Florida. I'm not saying it is not possible, but it didn't make any sense to me, why someone would want to do that.

The suspicion which Jones developed was not rationally connected with a belief that criminal conduct had occurred or was occurring. Jones simply used his knowledge of a fact to analyze what he observed, concluding that because it did not "make any

sense" to him, therefore, it must be criminal. This type of intuitive logic does not suffice to justify a stop. Just because a police officer testifies that he observed conduct that he thought was unusual is an insufficient basis upon which to conclude that criminal conduct has occurred or is occurring. *See Brown v. Texas*, 443 U.S. 47 (1979); *Zimmerman v. Commonwealth*, 234 Va. 609, 363 S.E.2d 708 (1988).

Furthermore, the evidence suggests that the "stolen car" rationale that Jones used for stopping the automobile was purely pretextual. Jones testified that before he stopped the automobile:

I saw the Florida tags. I then saw the bumper sticker on the bumper of the vehicle. I pulled up beside it. I saw two occupants, dark complexioned, no visible luggage, like I testified, nothing hanging in the windows, and I decided to stop the vehicle for further investigation, based upon things that I have heard.
Q: Based upon the drug profile supplied to you?
A: Right, and the bumper sticker, my believing the vehicle shouldn't be out of Florida; so I called my dispatcher and asked for registration check. In the meantime, I am going to stop the vehicle and talk to them.

Incredibly, despite his testimony that the automobile fit the drug profile, Jones denied suspecting that it contained drugs:

Q: Did you suspect the car was carrying narcotics prior to your stopping it?
A: I can't say that I actually suspected it, you know. The possibility remains in your mind. Say, well, these pieces are falling together. I have had the training. I have seen the written memos. You look for certain things, and certainly, when I saw all of these things, it remains in my mind they could be carrying weapons, narcotics, the car could be stolen. It is just a lot of things. You don't know until you stop the car, and then you talk to the people.

"[I]n determining whether an investigative stop is invalid as pretextual, the proper inquiry is whether a reasonable officer *would* have made the seizure in the absence of illegitimate motivation." *Smith*, 799 F.2d at 708; *see also United States v. Miller*,

821 F.2d 546, 549 (11th Cir. 1987). In view of the evidence presented in this case, the answer to such an inquiry must be in the negative. The stop was unreasonable not because Jones "secretly hoped to find evidence" of the narcotics, but because it was clear that a reasonable officer would have been uninterested in pursuing the driver of the Florida local rental agency automobile absent that hope. *Miller*, 821 F.2d at 549.

## II

Although the Commonwealth established that cocaine was hidden beneath the back seat of the rental automobile, the Commonwealth did not prove beyond a reasonable doubt that Castaneda knowingly and intentionally possessed the cocaine. The evidence does not establish that the bag in which the cocaine was located was visible to Castaneda or known by him to be in the rental automobile. According to the evidence, Trooper Childress searched the interior of the automobile for approximately ten minutes before lifting the back seat and finding the bag which he suspected of containing cocaine. After the dog "alerted" on the bag, Jones reached in "underneath the [back] seat" and retrieved the cocaine contained in "a Zayres shopping bag that had been rolled back."

"[O]ccupancy of [a] . . . vehicle upon or in which a controlled substance was found shall not create a presumption that such person either knowingly or intentionally possessed such controlled substance." Code § 18.2-250. "To establish 'possession' in a legal sense it is not sufficient to simply show actual or constructive possession of the drug by the defendant. The Commonwealth must also establish that the defendant intentionally and consciously possessed it with knowledge of its nature and character." *Buono v. Commonwealth*, 213 Va. 475, 476, 193 S.E.2d 798, 799 (1973). Moreover, the proof must amount to more than suspicion. "[C]ircumstances of suspicion, no matter how grave or strong, are not proof of guilt sufficient to support a verdict of guilty." *Clodfelter v. Commonwealth*, 218 Va. 619, 623, 238 S.E.2d 820, 822 (1977); *see also Powers v. Commonwealth*, 227 Va. 474, 316 S.E.2d 739 (1984). In order to support a verdict of guilty, the Commonwealth is required to prove knowledge and intent beyond a reasonable doubt. *Clodfelter*, 218 Va. at 623, 238 S.E.2d at 822; *Burton v. Commonwealth*, 215 Va. 711, 713, 213 S.E.2d 757, 758 (1975).

Castaneda testified that he, his wife, and Robert Castro went to Diaz Automobile Rental in Castaneda's wife's automobile and rented an automobile upon a daily rate. The rental agreement reflects that the mileage was free, and it quotes daily and weekly rental rates. Castaneda testified that he and Castro were making the trip to New York in order to visit Castro's family. He also testified that he informed the person who rented the automobile to him that he and Castro were going to New York. Castaneda further testified that, after the automobile was rented, Castro drove the automobile to Castro's home to prepare for the trip, and that Castaneda returned to his own home in his wife's automobile. Castro then came for him and they began the trip.

Castaneda also testified that Castro was also his partner in an auto parts and tow truck service. He displayed to the trial judge his business card with that information. In addition, the automobile rental agreement offered in evidence listed Castaneda's business as a towing service and contained a listing of the telephone number.

The record reveals that Castaneda, who came to the United States after immigrating from Cuba five years before his arrest, had never been convicted of a crime. He testified that after he gave Jones his license and papers he opened the trunk and emptied his bags without being directed to do so, because that was the required procedure when stopped by law enforcement officers in Cuba. He testified that he had never before been stopped by law enforcement officers in the United States, but naturally assumed that the same procedures were required.

While the [trier of fact] is the judge of both the weight of the testimony and the credibility of witnesses, it may not arbitrarily or without any justification therefor give no weight to material evidence, which is uncontradicted and is not inconsistent with any other evidence in the case, or refuse to credit the uncontradicted testimony of a witness, even though he be the accused, whose credibility has not been impeached, and whose testimony is not either in and of itself, or when viewed in the light of all the other evidence in the case, unreasonable or improbable, and is not inconsistent with any fact or circumstance to which there is testimony or of which there is evidence. There must be something to justify the

[trier of fact] in not crediting and in disregarding the testimony of the accused other than the mere fact that he is the accused, or one of them.

*Spratley v. Commonwealth*, 154 Va. 854, 864, 152 S.E. 362, 365 (1930); *see also Holland v. Commonwealth*, 190 Va. 32, 41, 55 S.E.2d 437, 441 (1949); *Hamilton v. Commonwealth*, 177 Va. 896, 903, 15 S.E.2d 94, 97 (1941). Even if the judge was privileged to disbelieve Castaneda's reason for going immediately to the trunk and opening his bags, the inferences flowing from Castaneda's conduct do not "satisfy the guarded judgment that both the corpus delicti and the criminal agency of the accused have been proved to the exclusion of any other rational hypothesis and to a moral certainty." *LaPrade v. Commonwealth*, 191 Va. 410, 418, 61 S.E.2d 313, 316 (1950).

Jones testified that he initially identified himself as a law enforcement officer and asked to see Castaneda's driver's license and registration papers. Jones testified that Castaneda "produced them without too much delay, and before I could say anything else, Mr. Castaneda opens the driver's door, gets out, goes right to the trunk of the vehicle, opens it up . . ., unzips [a travel bag], and starts emptying it of clothing and other items." Jones further testified:

I hadn't said a word except, "Let me see your driver's license and registration papers," and as he was doing this, I said, "Are you giving me permission to search your vehicle?" And his reply, said, "Yes, you search the car." I asked, "Are you carrying any narcotics or contraband?" "No. Search the car," and then I told him, "You don't have to let me search," and he says, "Search the car. No narcotics. I am going to New York." At about that time, Trooper Childress, the Trooper assigned to us, he arrived, and Mr. Castro, I asked him to step out of the vehicle, and I was talking to him. I informed Trooper Childress what had taken place before his arrival and of this man's consent to search the vehicle. While I was talking to this man and to Mr. Castro, Trooper Childress started a search of the vehicle.

Although Trooper Jones testified that when he stopped Castaneda "he seemed to understand everything I was saying to him" and

that "the further the search went, the less he understood English," the evidence neither reflects that Castaneda understood nor spoke the English language sufficiently to have understood that he was not required to open his trunk in order to permit a search of his automobile.

The majority concludes that because Castaneda went to the trunk of the automobile after the stop and opened it without having been directed by Trooper Jones to do so, Castaneda intended to draw Trooper Jones' attention from the back seat of the automobile. Upon this speculation the majority determines that the Commonwealth demonstrated "clear evidence of guilty knowledge." Such a conclusion is not the only rational inference from the facts, and certainly is not proof beyond a reasonable doubt that Castaneda knew the cocaine was beneath the automobile's rear seat. The officer testified that Castaneda willingly and unhesitatingly permitted a search of the entire vehicle at his request; thus, the majority's speculation that Castaneda opened the trunk to somehow divert Officer Jones from the interior of the vehicle is not well founded. Indeed, the very evidence from which the majority draws its inference fails to negate the reasonable hypothesis of innocence because Castaneda's conduct was also consistent with a lack of awareness of the presence of any drugs in the automobile, and hence a lack of guilty knowledge.

In *Clodfelter*, although the evidence established that narcotics were found in the hotel room that the defendant rented, that the defendant had the key to the room and had occupied the room, and that the defendant lied when questioned by the police and gave a false name, the Supreme Court held that the "evidence creates a strong suspicion of guilt but it falls short of showing beyond a reasonable doubt that the drugs found in the hotel room were ever actually or constructively possessed by Clodfelter with an awareness of their character." 218 Va. at 623, 238 S.E.2d at 822; *see also Brehens v. Commonwealth*, 3 Va. App. 131, 348 S.E.2d 430 (1986).

Where, as here, proof of Castaneda's knowledge is based on circumstantial evidence, "all necessary circumstances must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence." *Garland v. Commonwealth*, 225 Va. 182, 184, 300 S.E.2d 783, 784 (1983)(quoting *Carter v. Commonwealth*, 223 Va. 528, 532, 290 S.E.2d 865, 867

(1982). "It is not sufficient that the evidence create a suspicion of guilt, however strong, or even a probability of guilt, but must exclude every reasonable hypothesis save that of guilt." *Webb v. Commonwealth*, 204 Va. 24, 34, 129 S.E.2d 22, 29 (1963). "[S]uspicion, no matter how strong, is insufficient to sustain a criminal conviction." *Hairston v. Commonwealth*, 5 Va. App. 183, 187, 360 S.E.2d 893, 895 (1987). Although the evidence is strong and may "show a probability of guilt," *Smith v. Commonwealth*, 218 Va. 927, 929, 243 S.E.2d 463, 464 (1978), "the evidence is insufficient to carry the Commonwealth's case from the realm of probability and supposition into the area of proof beyond a reasonable doubt." *Hall v. Commonwealth*, 225 Va. 533, 537, 303 S.E.2d 903, 905 (1983). For these reasons, I would reverse the conviction.

Barrow, J., dissenting.

I agree that the investigative stop of the defendant's automobile did not violate his rights under the fourth amendment of the United States Constitution. I do not agree, however, that the evidence was sufficient to establish beyond a reasonable doubt that the defendant knowingly and intentionally possessed the cocaine found under the back seat of the automobile he was driving. Therefore, I cannot join the majority in affirming the defendant's conviction.

Although the drug courier profile used by the state police officer did not justify his stopping the defendant's automobile, it was a useful law enforcement tool available to him. *See Taylor v. Commonwealth*, 6 Va. App. 384, 386, 369 S.E.2d 423, 425 (1988). The profile identified the defendant's automobile for less intrusive investigation, which, in turn, led to the officer to see the bumper sticker, reading "Diaz Rental Car, Miami, Florida." Based on his previous experience, the police officer knew that automobiles from local rental agencies, as the bumper sticker indicated this one to be, usually imposed substantial monetary penalties if the vehicles were taken out of the state of Florida. This aroused his suspicion of criminal activity — that the vehicle was stolen or had been taken out of Florida without proper authority. He contacted his dispatcher, requested a registration check and stopped the vehicle to talk to its occupants.

The officer thus had "specific and articulable facts" available to him "which, taken together with rationale inferences from those facts, reasonably" warranted his stopping the defendant's vehicle to conduct further investigation. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Therefore, I find it unnecessary to go further and discuss the implications of the rental agreement, the training manual of the Department of the State Police, whether the occupants of the vehicle were unshaven, whether they carried luggage or clothes visible inside the vehicle, or whether they displayed unusual nervousness in the presence of police officers at the toll plaza. Furthermore, even though the officer may have harbored some subjective hope of discovering narcotics activities, he had a sufficiently objective basis for legally stopping the car, thus rendering any subjective belief irrelevant. *See Maryland v. Macon*, 472 U.S. 463, 470-71 (1985); *Scott v. United States*, 436 U.S. 128, 137 (1978).

Even though the search was legal, affirmance of the defendant's conviction does not necessarily follow. The Commonwealth still had to prove beyond a reasonable doubt that the defendant possessed the cocaine which was found in the back seat. In concluding that the defendant had constructive possession, the majority relies on his presence in the automobile and his efforts to facilitate the police officer's search of the car's trunk.

The "ownership or occupancy" of a vehicle in which a controlled substance is found does not "create a presumption" of knowingly or intentionally possessing the substance. Code § 18.2-250. Furthermore, mere proximity to a controlled drug is insufficient to establish the elements of possession. *Drew v. Commonwealth*, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986). Thus, the sufficiency of the evidence of the defendant's guilt rests on the majority's interpretation of the defendant's efforts to facilitate the search of the automobile.

The defendant encouraged the police officer to search his vehicle. After the officer identified himself as a special agent of the state police, he asked to see the defendant's driver's license and registration papers, which the defendant produced without much delay. Before the police officer "could say anything else" the defendant opened the door of the car, got out and opened the trunk. The police officer asked if he was giving him permission to search the vehicle, and the defendant responded, "Yes." When the police

officer asked if he had any narcotics or contraband the defendant said, "No. Search the car." Finally, the police officer told him, "You don't have to let me search," and the defendant responded, "Search the car. No narcotics. I am going to New York."

The majority interprets this as an "attempt to draw the officer's attention away from the back seat where the drugs were hidden." There is, however, another equally reasonable but innocent, interpretation of the defendant's action. He may not have known of the cocaine in the car and, either to demonstrate his innocence or to expedite getting back on the road, sought to facilitate the search.

If, instead of encouraging a search of the car, the defendant had discouraged the police from searching in the back seat, his action may have justified an inference of guilty knowledge. If the defendant had said nothing during the search until the officer reached the back seat and then had insisted that nothing was there, his assertion of knowledge about what was in the back seat, coupled with his silence during the remainder of the search, would have tended to prove his knowledge of the presence and character of the contraband. *See Lane v. Commonwealth*, 223 Va. 713, 716, 292 S.E.2d 358, 360 (1982). However, the opposite behavior, encouraging a search of the automobile, does not indicate knowledge of the presence and character of the contraband merely because the defendant encouraged the officer to start a search at a location other than where the drugs were found.

The defendant, who the police officer described as speaking with a heavy Spanish accent, testified at trial through an interpreter. He stated that he was forty-two years old and had lived in Cuba for thirty-seven years. He went on to explain that in Cuba, when the authorities stop an automobile, the driver is required to open his trunk and permit a search. Although the trial judge was free to reject the defendant's explanation of his actions, the majority cannot now substitute a different explanation to infer the defendant's supposed guilty knowledge.

Without the unjustified incrimination derived by the majority from the defendant's actions, the evidence does not "exclude every reasonable hypothesis of innocence" and "form an unbroken chain . . . [linking] the defendant to the crime beyond a reasonable doubt." *Boothe v. Commonwealth*, 4 Va. App. 484, 492, 358 S.E.2d 740, 745 (1987) (*citing Bishop v. Commonwealth*, 227 Va.

164, 169, 313 S.E.2d 390, 393 (1984)) (citation omitted). The evidence did not exclude the thesis that the cocaine had been placed under the seat by someone before the defendant had rented the automobiles. *See Powers v. Commonwealth*, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984) (evidence insufficient where LSD was found in unfinished attic of defendant's residence); *Clodfelter v. Commonwealth*, 218 Va. 619, 623, 238 S.E.2d 820, 822 (1977) (evidence insufficient where drugs were found in hotel rented by defendant under false name); *Behrens v. Commonwealth*, 3 Va. App. 131, 136, 348 S.E.2d 430, 433 (1986) (evidence insufficient where cocaine was found in motel room rented by defendant). Nor did the evidence exclude the thesis that the cocaine had been placed under the seat by the car's other occupant without the defendant's knowledge. *See Crisman v. Commonwealth*, 197 Va. 17, 20, 87 S.E.2d 796, 799 (1955) (evidence insufficient where heroin was found on floor of automobile occupied by five men).

Therefore, although I concur in the conclusion that the search was legal, I would reverse the defendant's conviction because of the lack of evidence that the defendant knew the cocaine was underneath the back seat of the automobile.