**Richmond**

OSLET FRANKLIN LOWERY

v.

COMMONWEALTH OF VIRGINIA

No. 0424-88-2

Decided January 16, 1990

COUNSEL

Larry E. Gilman (Bynum, Johnson, Gilman and Stacey, on brief), for appellant.

H. Elizabeth Shaffer, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

Opinion

**BARROW, J.**—In this appeal we are urged to hold that the race of the driver of an automobile, along with other factors, may be used in deciding whether a stop of his vehicle was justified. We decline to do so. However, we find that the stop of the automobile was justified for other reasons. Furthermore, we conclude that the evidence was sufficient to support the finding that the driver possessed the marijuana found in his car.

An officer of the Virginia state police observed the defendant, a black male, traveling north on Interstate 95 in a vehicle bearing a Florida license plate with a letter on it indicating that the car was a rental car. The officer determined through the Division of Motor Vehicles that the defendant's car was owned by Alpha Auto Leasing. Since he knew that local leasing agencies, unlike the larger national ones, often prohibit a lessee from taking their cars out of Florida, his suspicion of criminal activity was aroused. The officer explained that, in making the stop, he relied on a drug courier profile developed by the Virginia State Police Department. He said that the profile initially involved looking for northbound rental vehicles from Florida. He said that the profile later was changed to include looking for such vehicles occupied by "black males and Latin males."

The officer stopped the vehicle and sought and obtained permission to search it. In the vehicle's trunk he found two blue suitcases. The defendant told the officer that they contained only clothes and that the agent could look inside of them. When the agent opened the suitcases, he discovered twenty-four zip-lock plastic bags containing twenty-six pounds of marijuana and a single thirty-six pound bale of marijuana wrapped in plastic and paper.

After being advised of his *Miranda* rights, the defendant was asked if the marijuana belonged to him. The defendant answered: "[W]ell, it's in my bag; I guess that makes it mine."

The defendant later admitted to the officer that he had been paid to take the packages to Washington, D. C. He said he had met four or five Jamaicans at a party in Miami, who paid him $1,000 plus expenses to deliver the marijuana. The defendant gave his suitcases to the Jamaicans and they placed the packages in his

suitcases. He was instructed that, upon arrival in Washington, he was to take the packages to the Trailways bus station and wait to be contacted.

■ We first address the legality of stopping the defendant's car. An investigative stop of an automobile "must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 417 (1981) (footnote omitted). The law enforcement officer conducting the stop must be able to "point to specific and articulable facts which, taken together with rational inferences from these facts, reasonably warrant" stopping a person to conduct further investigation. *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

The Commonwealth argues that, in addition to the other observations made by the state police officer, the defendant's race was a permissible factor in the decision to stop his vehicle. We disagree.

■ The use of race or national origin for this purpose violates both Article I, section 11 of the Constitution of Virginia ("the right to be free from government discrimination upon the basis of . . . race") and the equal protection clause of the fourteenth amendment. "[T]he central purpose of the Fourteenth Amendment was to eliminate racial discrimination emanating from official sources in the States. This strong policy renders racial classifications 'constitutionally suspect' and subject to the 'most rigid scrutiny,' and 'in most circumstances irrelevant' to any constitutionally acceptable legislative purpose." *McLaughlin v. Florida*, 379 U.S. 184, 192 (1964) (citations omitted). Moreover, "[i]n order to justify the use of a suspect classification, a State must show that its purpose or interest is both constitutionally permissible and substantial, and that its use of the classification is 'necessary . . . to the accomplishment' of its purpose or the safeguarding of its interest." *In re Griffiths*, 413 U.S. 717, 721-22 (1973) (footnotes omitted). While we agree that the State has a substantial interest in apprehending drug traffickers, we do not agree with the Commonwealth's argument that this type of racial classification is necessary to accomplish that objective. A person's race or national origin does not indicate a propensity to traffic in drugs.[1]

---

[1] We do not hold that race may never be used to describe a person who has committed a crime. A police officer armed with the description of a suspect may consider the person's race when deciding whether that person sufficiently meets the description so as to

█ In addition to finding that use of a person's race or national origin to justify a vehicle stop to investigate drug trafficking is contrary to the Constitution of Virginia and the fourteenth amendment of the United States Constitution, we likewise find that it violates the reasonableness requirement of the fourth amendment of the United States Constitution. We acknowledge that a person's apparent national origin may be relevant in some circumstances to justify, in part, an investigatory stop of his vehicle. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 886-87 (1975) ("The likelihood that any given person of Mexican ancestry is an alien is high enough to make Mexican appearance a relevant factor, but standing alone it does not justify stopping all Mexican-Americans to ask if they are aliens"). However, we find that it is unreasonable for the police to consider the apparent race or national origin of the suspect as a factor in determining whether, in a particular case, there is reason or probable cause to believe that the suspect is trafficking in drugs, except when used to describe a previously identified suspect.

For these reasons, we conclude that the Commonwealth's use of the defendant's race to justify stopping his vehicle in order to investigate suspected drug trafficking violated Article I, section 11 of the Constitution of Virginia and fourth and fourteenth amendments to the United States Constitution.

█ Nevertheless, we need not reverse the defendant's conviction. Even though a governmental decision motivated by race is not entitled to judicial deference, *see Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265-66 (1977), suppression of seized evidence need not invariably follow. Where there is an objective justification for a police officer's decision, the evidence seized as a result of a detention need not be suppressed. *Maryland v. Macon*, 472 U.S. 463, 470-71 (1985); *Scott v. United States*, 436 U.S. 128, 136-37 (1978); *United States v. Basey*, 816 F.2d 980, 991 (5th Cir. 1987). On the other hand, suppression must result where the justification for a search is dependent upon use of an invidious racial classification.

justify stopping him for further investigation. *See United States v. Thomas*, 863 F.2d 622, 626 (9th Cir. 1988); *United States v. Fouche*, 776 F.2d 1398, 1403 (9th Cir. 1985), *cert. denied*, 486 U.S. 1017 (1988); *Wells v. Commonwealth*, 6 Va. App. 541, 552, 371 S.E.2d 19, 25 (1988).

■ In this case, the officer had an objective justification for detaining the defendant which was independent of the profile utilizing race as a factor. A police officer's discovery in Virginia of a Florida rental vehicle owned by a local Florida rental agency, together with the officer's knowledge that such agencies generally prohibit their automobiles from being taken outside of the state, justifies a reasonable suspicion that the vehicle is stolen or may have been removed from Florida without proper authority. *Castaneda v. Commonwealth*, 7 Va. App. 574, 581-82, 376 S.E.2d 82, 85-86, (1989); *Id.* at 585, 376 S.E.2d at 87 (Coleman, J., concurring); *Id.* at 592, 376 S.E.2d at 91 (Barrow, J., dissenting). Even though the officer's subjective intent in stopping the defendant's automobile may have been insufficient, all of the circumstances viewed objectively justified his action. *Bosworth v. Commonwealth*, 7 Va. App. 567, 570, 375 S.E.2d 756, 758 (1989). Therefore, we conclude that the officer had adequate justification, independent of the profile using race as a factor, to stop the defendant's vehicle.

Having concluded that this was a justified stop, we now address whether the evidence sufficiently supported the finding that the defendant possessed the marijuana found in his suitcases in the trunk of the car.

■ To support a conviction of possession of an illegal drug, there must be evidence "that the defendant was aware of the presence and character of the drug and was intentionally and consciously in possession of it." *Hairston v. Commonwealth*, 5 Va. App. 183, 186, 360 S.E.2d 893, 895 (1987). Whether a defendant knows of the existence of narcotics at the place where they are found may be demonstrated through the defendant's declarations or conduct. *Id.* Furthermore, we must review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible from the evidence. *Norman v. Commonwealth*, 2 Va. App. 518, 520, 346 S.E.2d 44, 45 (1986).

The location of the marijuana, its quantity, and the defendant's own declarations sufficiently support the inference that the defendant was aware of the presence and character of the marijuana and was intentionally and consciously possessing it. The marijuana, consisting of one single parcel weighing thirty-six pounds and twenty-four other parcels weighing a total of twenty-six pounds, was found in two of his suitcases located in the trunk of

the car he was driving. The circumstances under which he acquired the marijuana, the large amount of money he was paid to deliver it and his ambivalent admission that it was his, were sufficient to support the conviction.

In summary, we conclude that, although the defendant's race was not a permissible factor to be considered in justifying the stop of his vehicle, the police officer was justified in stopping the automobile. We also hold that the evidence was sufficient to support the finding that the defendant possessed the marijuana found in the vehicle. For these reasons, we affirm the defendant's conviction.

*Affirmed.*

Coleman, J., and Keenan, J., concurred.