**Stewart A. TAYLOR d/b/a Taylor Cutlery Manufacturing Co.**

v.

**Gerald J. McMANUS and Joel R. Mish, John P. Simpson, Fred Burns O'Brian.**

No. Civ–2–85–199.

United States District Court,
E.D. Tennessee,
Northeastern Division.

Nov. 5, 1986.

James R. Shipley, Kingsport, Tenn., Stephen P. Halbrook, Fairfax, Va., for plaintiff.

J. Edgar Schmutzer, Greeneville, Tenn., for defendant.

## MEMORANDUM AND ORDER

HULL, Chief Judge.

This is an action for injunctive and declaratory relief[1], which came before the Court for trial without a jury on October 27, 1986. Jurisdiction is founded on 28 U.S.C. §§ 1331, 1337, 2201, and 2202.

Plaintiff, who imports and sells Balisong or "butterfly" knives, alleges that United States customs officials have illegally seized shipments of his knives in Charleston, South Carolina; Savannah, Georgia; and Knoxville, Tennessee. He asks the Court to declare that Balisong knives are not switchblades within the meaning of the Switchblade Knife Act (15 U.S.C. § 1241(b)) and the regulations promulgated by the Secretary of the Treasury at 19 C.F.R. § 12.95(a). Plaintiff also asks the Court to enjoin the defendants from seizing future shipments of Balisong knives.

Defendants, United States customs officials[2] sued in their official capacities[3], contend that plaintiff's Balisong knives are switchblades within the meaning of the Switchblade Knife Act and 19 CFR § 12.95(a)(1) of the Secretary of the Treasury's regulations[4]. Accordingly, they deny that plaintiff is entitled to declaratory or injunctive relief.

The Switchblade Knife Act (the Act) defines "switchblade knife" at 15 § 1241(b):

The term "switchblade knife" means any knife having a blade which opens automatically—

(1) by hand pressure applied to a button or other device in the handle of the knife, or

(2) by operation of inertia, gravity, or both.

The Secretary defines switchblade knife as follows at 19 C.F.R. § 12.95(a)[5]:

(a) Switchblade knife. "Switchblade knife" means any imported knife which has:

(1) A blade which opens automatically by hand pressure applied to a button or device in the handle of the knife, or any knife with a blade which opens automati-

1. Plaintiff originally sued for compensatory damages, which the Court ruled were barred by the doctrine of sovereign immunity in Orders of June 6, 1986; June 26, 1986; and October 14, 1986.

2. John P. Simpson is Director of Regulations and Rulings of the U.S. Customs Service in Washington, D.C. Fred Burns O'Brian is staff attorney with the United States Customs Service. Joel R. Mish, formerly the Area District Director of U.S. Customs in Charleston, South Carolina, is now acting district director in New Orleans, Louisiana. Gerald J. McManus is District Director of the U.S. Customs Service in Savannah, Georgia.

3. Plaintiff originally sued defendants Mish and McManus in their individual capacities, but the Court dismissed these claims for lack of venue by Order of November 19, 1985.

4. Defendants stipulated at trial that they relied solely on 19 CFR § 12.95(a)(1), and not 19 CRF § 12.95(a)(2), in classifying Balisong knives as switchblades.

5. Plaintiff originally claimed that the Secretary's regulations were invalid in that the regulations impermissibly expand the definition of a switchblade beyond that found in the Switchblade Knife Act. However, citing *United States of America v. Murphree,* 783 F.2d 605 (6th Cir. 1986), the Court ruled that the regulations were valid. Court Order of June 6, 1986.

cally by operation of inertia, gravity, or both. . . .

The subject knife of this lawsuit, the Balisong or "butterfly" knife, originated in the Phillipines several hundred years ago. Although varied in style and design, the Balisong is basically a folding knife with a split handle. In the closed position, the two halves of the handle enclose the blade. To open the knife, the two halves are folded back until they meet and are then secured by a clasp. U.S. Customs Ruling of September 28, 1982. While the exotic knife has some utilitarian use, it is most often associated with the martial arts and with combat. *See, Donald S. Bitanga, The Butterfly Manual,* "Foreward", p. 6. Light and maneuverable, the Balisong can be opened very rapidly, perhaps in less than five seconds, by a skilled practitioner using the techniques taught in Bitanga's manual.[6] Undoubtedly, then, these knives are potentially dangerous, lethal weapons.

However, the Balisong's dangerous potential as a weapon is not at issue in this case since congress has not chosen to regulate on that criteria alone. The critical issue is whether these knives are prohibited switchblades within the meaning of the Act and the Secretary's regulations. Obviously, since the Balisong knives contain no button or device in the handle, the Court must base its decision on whether the Balisongs "open automatically by operation of inertia, gravity, or both." 15 U.S.C. § 1241(b)(2) and 19 C.F.R. § 12.95(a)(1).

Unfortunately, previous court rulings on this issue are of minimal value. A seminal case interpreting the Act, *Precise Imports Corp. v. Kelly,* 378 F.2d 1014 (2d Cir.1967), *cert. denied,* 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465, discusses congress's intent to ban knives if they are primarily used as weapons and can be made to open automatically with "insignificant alterations." *Id.* at 1017. However, the defendants in this case do not argue the "insignificant alterations" issue. An Oregon district court wrestled with the precise issue before this Court in *United States of America v. 1,044*

*Balisong Knives,* CIV NO. 70–110 (D.C.Oregon 1970), finding that "Although a person with the requisite skill can rapidly open a Balisong knife with one hand, the knives do not have blades which open automatically by operation of inertia, gravity, or both." *Id.* at 4. But while the court's decision is perfectly clear, the opinion offered no reasoning for the court's findings. In fact, after examining the case law, the Court finds that the issue of whether Balisongs are prohibited switchblade knives is essentially one of first impression.

Of course, in view of the custom agency's recent ruling that the Balisong is a switchblade, the Court must limit its scope of review pursuant to 5 U.S.C. § 706, which states, in pertinent part:

The reviewing Court shall— . . .

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

Nevertheless, when the administrative construction is clearly contrary to the plain and sensible meaning of the regulation, courts need not defer to it. *Hart v. McLucas,* 535 F.2d 516 (9th Cir.1976). Furthermore, where the administrative agency's rulings have vacillated within a few years time without any change in statute, case law, or circumstances, the Court is justified in more closely scrutinizing the agency's ruling.

Here, evidence indicates that customs have wavered in its rulings on Balisong knives. While the Act was passed in 1958, customs did not attempt to regulate importation of Balisongs until 1969. Following the *United States v. 1,044 Balisong Knives* decision, customs justifiably changed its position again, ruling that "The balisong or butterfly knife would be classifiable under the provision for pen knives, pocket knives, and other knives. . . ." (Reference No. 057349, October 12, 1978, appended to Plaintiff's Trial Memorandum, Court File No. 33). On September 28,

---

**6.** Plaintiff testified at trial that he hired Bitanga to author *The Butterfly Manual* in order to promote sales of the Balisong to martial arts enthusiasts.

1982, customs issued a consistent ruling (No. 719012, Court File No. 33) which held: "T.D. 71–133 is rescinded and Balisong and 'Balisong' design knives are admissible subject to all other customs requirements for importation...." However, by 1985 the agency had reversed itself again and ruled that Balisong knives were prohibited. Therefore, based on this overwhelming evidence of the agency's rather arbitrary shifts of opinion, the Court finds that it need not afford great weight to the agency's rulings.

Having determined that the agency's rulings have shifted arbitrarily and, braced with the knowledge that customs officials have long grappled with this same issue, the Court must now determine whether Balisong knives are switchblades within the plain meaning of the Act. Defendants argue that the Balisongs are prohibited because they open automatically—by means of gravity or inertia. To illustrate their point, defendants refer to *The Butterfly Manual,* which describes such methods as "The Silent Drop" as a means of opening the knife by gravity. Furthermore, defendant's attorney demonstrated at trial that the blade could rapidly be exposed by means of inertia. The attorney held one of the the two knife handles in one hand and quickly flipped his wrist, thereby exposing the blade. He then grasped the second handle as the blade flipped open, rendering the knife ready for use.

Plaintiff, on the other hand, argues that the knife is not "automatic", since automatic means "self-acting". Plaintiff points out that one must manually unlock the clasp, allow the blade to swing or drop from the handle, fold back the other handle, and then lock the clasp before the knife is ready to use. While a skilled practitioner might perform these maneuvers in a few seconds, plaintiff argues that the knife is still opening manually, not automatically.

Furthermore, while plaintiff admits that the blade can be exposed by force of gravity or inertia (i.e., flipping the wrist), he argues that the knife is not open for use until the second handle is manually folded back. Therefore, it is not truly "opened" by gravity or inertia. Plaintiff cites Webster's Dictionary, Seventh Edition, as defining "open" as "ready to use". Defendants also cite Webster's, pointing out that "open" also means "exposed".

At trial, plaintiff's experts uniformly testified that, whereas a switchblade knife opens for use in one, continuous, automatic movement, the Balisong requires seven or eight manual movements. Defendants' expert, a national import specialist with United States Customs, stated that the Balisong is a switchblade since the knife blade drops out of the handle by force of gravity alone.

After careful consideration of the evidence presented at trial and of the record as a whole, the Court finds that the Balisong knives presented in evidence at this trial are not switchblades within the meaning of the Act and § 12.95(a)(1) of the regulations.[7] In examining the congressional record, it seems obvious that congress intended to prohibit knives which opened automatically, ready for instant use. Rep. Kelly, for example, described the switchblade "as a weapon (which) springs out at the slightest touch and is ready for instant violence." *Switchblade Knives: Hearings Before a Subcommittee of the Committee on Interstate and Foreign Commerce,* House of Rep., 85th Cong., 2d Sess. 13, 29 (1958). She also noted that the prohibited gravity knife opens and "anchors in place automatically. Every bit as fast as the switchblade, it has proved to be as effective a killer." *Id.* at 29. Similarly, Rep. Delaney described the prohibited gravity knives as "knives (which) open *and lock* automatically at a quick flick of the wrist." 104 CONG.REC., 85th Cong., 2nd Sess. 12398 (June 26, 1958). (emphasis supplied). Apparently, then, Congress was not concerned with whether the knife's blade would merely be exposed by gravity. Instead, they intended "open" to mean "ready for use", as exhibited in Rep. Kelley's testimony that the switchblade opened

---

7. The Court makes no finding as to whether some or all Balisong knives might be prohibited under 19 C.F.R. § 12.95(a)(2), since that issue was not presented for trial.

"ready for instant violence" and her and Rep. Delaney's comments that the gravity knife opened *and locked* automatically. While the Court does not intend to read into the Statute a requirement that the blades "lock" automatically, it does seem apparent that Congress intended "open" to mean "ready for use". Obviously a knife that has not locked into an open position is not ready for use. Since the Balisong knives cannot be used until the second handle is manually folded back and clasped, the Court finds that they do not open automatically by force of gravity or inertia.

Moreover, the Court finds that the knives do not operate automatically since they require at least two manual operations even after the blade is exposed: (1) grasping and folding the second handle and (2) fastening the clasp which locks the handles together.

### SUMMARY

Since the Balisong knives do not open automatically by force of gravity or inertia, the Court finds that they are not switchblade knives within the plain meaning of the Switchblade Knife Act and the Secretary's regulations. Furthermore, the Court finds that the agency's recent ruling that the knives are switchblades is arbitrary, especially in view of the agency's recent history of vacillating on the issue.

Accordingly, it is hereby ORDERED that the Balisong knives presented in evidence in this case are not switchblade knives within the meaning of 19 C.F.R. § 12.-95(a)(1); that defendant customs officials are ENJOINED from seizing future importation of Balisong knives under 19 C.F.R. § 12.95(a)(1); and that the agency RELEASE custody of plaintiff's Balisong knives.