COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Senior Judges Willis and Annunziata
Argued by teleconference

WAYNE THOMPSON
                                                        OPINION BY
v.        Record No. 0749-06-4              JUDGE ROSEMARIE ANNUNZIATA
                                                        FEBRUARY 5, 2008
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
James F. Almand, Judge

Jonathan Y. Short (Jonathan Y. Short, P.C., on brief), for appellant.

Leah A. Darron, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Appellant, Wayne Thompson, appeals his conviction of Code § 18.2-308.2 on three

grounds. First, he contends that the trial court erred in denying his motion to suppress the knife

found on his person during a frisk for weapons. Second, he contends that the trial court erred in

denying appellant's motion to dismiss the indictment and permitting amendment of the

indictment before trial. Finally, he contends the evidence was insufficient to prove that the knife

found in his possession was a "weapon of like kind" which is prohibited from being carried in a

concealed manner by Code § 18.2-308.2. Finding each contention to be without merit, we

affirm.

I.  FACTS AND PROCEEDINGS

Applying well established principles of review on appeal, we state the evidence in the

light most favorable to the party prevailing below, the Commonwealth in this instance. See

Haskins v. Commonwealth, 31 Va. App. 145, 149-50, 521 S.E.2d 777, 779 (1999).

At about 8:00 p.m. on August 20, 2004, Officer Curtis Blake was conducting surveillance in the Green Valley neighborhood of Arlington County. Blake described the area as a neighborhood where the police had made multiple arrests for narcotics, weapons, and minor offenses.

During the surveillance, Blake saw appellant on a street corner, known as a location for drug sales and use. Appellant was wandering around with no apparent purpose. Blake had ten to twenty earlier contacts with appellant that included an arrest for narcotics. Blake was aware of appellant's other narcotics violations arrests, that he was a habitual user of crack cocaine and heroin, and that his heroin use involved needles. Blake's information about appellant was shared with other members of his tactical unit, including Officers Greg Johnson and David Giroux.

After Blake circled the block in his vehicle, he saw appellant enter a van. Based upon his observations and prior knowledge about appellant's involvement with narcotics, Blake suspected that appellant was relocating to a different part of the neighborhood to use or purchase drugs. Blake radiobroadcasted his observations to other officers and drove to a location near appellant's home where he observed the van arrive and park.

Acting upon information he received from Blake, Johnson drove nearer the van and observed appellant and two others congregated outside the passenger side of the van. Johnson described the men as "huddled" together; one of the three was looking around "as if something was going on they didn't want people to see." Appellant repeatedly looked over his shoulder and in various directions. One of the men was bent over and using a lighter under an object that he held up to but not in his mouth, ostensibly, in Johnson's opinion, to get the smoke that would be generated. The observed conduct raised Johnson's suspicion that the three men were getting ready to inhale or had inhaled a substance that Johnson believed to be crack cocaine. Giroux and Blake heard Johnson's radio broadcast regarding his observations of the men, noting that one of them was

smoking something that Blake testified, "appeared to be a crack stem or crack pipe." Giroux and Blake approached the van on foot. Blake placed his hands upon one of the individuals, who appeared "very nervous." Another individual fled, but was subsequently apprehended. Giroux testified that when police officers converge upon individuals involved in criminal activity on the street, commonly one member of the group will "rabbit away" to divert the attention of the officers, leaving the other individuals to dispose of whatever contraband may have been involved in their activity.

Giroux observed appellant looking around the van, apparently attempting to avoid contact with the police. Giroux approached appellant from the side, identified himself, and asked appellant to display his hands. Giroux could not see appellant's left hand, so he placed handcuffs on appellant. Giroux knew from his experience and training that crack cocaine users can be "unpredictable, combative, [and] sometimes violent." When he patted down appellant for weapons, Giroux felt in appellant's left pants pocket a "long, flat, hard object" the officer believed was a closed folding knife or something that could be used as a weapon. The officer retrieved the object, a folding butterfly-style knife.

After the police detained appellant, Johnson found a crushed soda can with holes and burnt residue in the top on the ground in the area. The soda can had been altered in a manner Johnson characterized as consistent with its use as a smoking device for cocaine. Moreover, the officer detected the odor of crack cocaine smoke on the can.

Appellant's motion to suppress the knife was denied by the trial court on the ground that the police had reasonable articulable suspicion appellant was involved in drug activity and they were justified in detaining him. The trial court further found the police were justified in frisking appellant for weapons in light of appellant's prior possession of needles.

The indictment charged that appellant "did knowingly and intentionally carry about his person, hidden from common observation a butterfly knife or weapon of like kind, after having been previously convicted of a felony, in violation of Section 18.2-308.2 of the Code of Virginia . . . ." Before trial, appellant moved to dismiss the indictment, arguing that a butterfly knife was not a weapon that Code § 18.2-308.2 specifically prohibited a felon from carrying in a concealed manner. The Commonwealth moved to amend the indictment to track the language of Code § 18.2-308.2. The trial court granted the Commonwealth's motion, amending the indictment to charge that appellant carried in a concealed manner "a dirk, bowie knife, switchblade knife, ballistic knife, machete, or razor or any weapon of like kind." Appellant did not claim surprise regarding the charged offense or request a continuance of the trial date.

The knife seized from appellant, described by Giroux as a "butterfly knife" or "balisong," had a split handle that opened to expose the blade. The four-inch blade had a sharp edge and a blunt edge. The knife was held closed by a latch on the bottom of the handle and could be opened and readied for use with one hand. Giroux described the knife as "designed for one-handed operation with a flip of the wrist." Giroux stated he frequently had seized the same type of knife, which is easily concealed and dangerous to police officers, from gang members.

Appellant testified that when he encountered the police on August 20, 2004, he possessed a pair of wire cutters and channel lock pliers. Appellant explained how the wire cutters, the same instrument Giroux identified as a butterfly knife, were useful in splicing wires. Appellant said he used the tools in his work as an auto mechanic and that he had been at work at Ben's Auto prior to being stopped by the police. Appellant admitted having prior felony convictions.

II.  ANALYSIS

A.  Motion to Suppress

Appellant contends the police officers detained and frisked him in violation of his Fourth Amendment rights.  Encounters between the police and citizens "generally fall into one of three categories."  McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*).

> First, there are consensual encounters that do not implicate the Fourth Amendment.  Iglesias [v. Commonwealth], 7 Va. App. [93,] 99, 372 S.E.2d [170,] 173 [(1988)].  Next, there are brief investigatory stops, commonly referred to as "Terry" stops, which must be based upon reasonable, articulable suspicion that criminal activity is or may be afoot.  United States v. Sokolow, 490 U.S. 1, 7 (19[8]9).  Finally, there are "highly intrusive, full-scale arrests" or searches that must be based upon probable cause to believe that the suspect has committed a crime.  Id.; see also Wechsler v. Commonwealth, 20 Va. App. 162, 169, 455 S.E.2d 744, 746-47 (1995).

Id.  Consensual encounters need not be justified by any suspicion of criminal activity "'[a]s long as the person to whom questions are put remains free to disregard the questions and walk away[.]'"  Blevins v. Commonwealth, 40 Va. App. 412, 421, 579 S.E.2d 658, 662 (2003) (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)), aff'd, 267 Va. 291, 590 S.E.2d 365 (2004).  A Terry stop, on the other hand, must be based upon "reasonable, articulable suspicion that a person is engaging in, or is about to engage in, criminal activity . . . ."  McGee, 25 Va. App. at 202, 487 S.E.2d at 263.  Reasonable suspicion is "'a particularized and objective basis' for suspecting the person stopped of criminal activity."  Ornelas v. United States, 517 U.S. 690, 696 (1996).  However,

> "[t]here is no 'litmus test' for reasonable suspicion.  Each instance of police conduct must be judged for reasonableness in light of the particular circumstances."  Castaneda v. Commonwealth, 7 Va. App. 574, 580, 376 S.E.2d 82, 85 (1989) (citing Terry v. Ohio, 392 U.S. 1, 21 (1968)).  "In order to determine what cause is sufficient to authorize police to stop a person, cognizance must be

taken of the 'totality of the circumstances – the whole picture.'" Leeth [v. Commonwealth], 223 Va. [335,] 340, 288 S.E.2d [475,] 478 [(1982)](citing United States v. Cortez, 449 U.S. 411, 417 (1981)).

Harmon v. Commonwealth, 15 Va. App. 440, 445, 425 S.E.2d 77, 79 (1992).

Here, the totality of the circumstances supported Giroux's belief that appellant had engaged, or was about to engage, in criminal activity. The police spotted appellant, a habitual user of narcotics, loitering in an area known for drug distribution and use. He entered a van, traveled to another location with two other men, and then huddled with them outside the van. One of the men was bent over and using a lighter in a manner consistent with inhaling crack cocaine. At the same time, appellant repeatedly looked over his shoulder, as if watching for the police or others. Moreover, one of the men fled as the police officers converged, consistent with a diversionary tactic commonly used to divert officers' attention and permit the other members of the group to dispose of contraband. In light of these observations, the police had reasonable articulable suspicion to detain appellant and determine whether he was involved in the use of narcotics.

"An officer, while obeying the constitutional requirements of Terry, may stop, question, and physically detain an individual, if necessary." Buck v. Commonwealth, 20 Va. App. 298, 303, 456 S.E.2d 534, 536 (1995). Contrary to appellant's contentions, the use of handcuffs on him did not transform the detention into an illegal arrest. "Brief, complete deprivations of a suspect's liberty, including handcuffing, do not 'convert a stop and frisk into an arrest so long as the methods of restraint used are reasonable to the circumstances.'" Thomas v. Commonwealth, 16 Va. App. 851, 857, 434 S.E.2d 319, 323 (1993) (quoting United States v. Crittendon, 883 F.2d 326, 329 (4th Cir. 1989)), aff'd on reh'g en banc, 18 Va. App. 454, 444 S.E.2d 275 (1994). Moreover, "suspicion of narcotics possession and distribution . . . gives rise to an inference of dangerousness[.]" Williams v. Commonwealth, 4 Va. App. 53, 67, 354 S.E.2d 79, 87 (1987).

The use of handcuffs upon a suspect may be reasonable as a precaution where police officers are confronted with a potentially dangerous situation.  See Johnson v. Commonwealth, 20 Va. App. 49, 55, 455 S.E.2d 261, 264-65 (1995) (during frisk for weapons, use of handcuffs was reasonable where police believed defendant possessed drugs and a weapon).

The police had seen appellant in a group that appeared to be using drugs.  When Giroux approached appellant, the officer could not see one of appellant's hands.  Appellant was known to use needles in conjunction with his drug use.  Giroux stated that crack cocaine users can be "unpredictable, combative [and] sometimes violent" and their smoking devices can be used as weapons.  Under the circumstances, it was reasonable for Giroux to restrain appellant's hands during the investigative detention.  Giroux's objectively reasonable apprehension that appellant might pose a danger to the police made the officer's use of handcuffs a reasonable measure of protection.

The pat down that ensued also was proper.  "Once a police officer has properly detained a suspect for questioning he may conduct a limited pat-down search for weapons if he reasonably believes that the suspect might be armed and dangerous."  Williams, 4 Va. App. at 66, 354 S.E.2d at 86.

> "Among the circumstances to be considered in connection with this issue are the 'characteristics of the area' where the stop occurs, the time of the stop, whether late at night or not, as well as any suspicious conduct of the person accosted such as an obvious attempt to avoid officers or any nervous conduct on the discovery of their presence."  United States v. Bull, 565 F.2d 869, 870-71(4th Cir. 1977), cert. denied, 435 U.S. 946 (1978).  [In addition,] . . . the character of the offense which the individual is suspected of committing [i]s a circumstance which the officer may consider.

Id. at 67, 354 S.E.2d at 86-87.  See also United States v. Sakyi, 160 F.3d 164, 170 (4th Cir. 1998).  The detention occurred at night in an area known for drugs and crime.  As noted earlier, the police observed appellant with a group of men, one of whom appeared to be using drugs.

Appellant was known to be a drug user, himself. Appellant's drug use involved needles, which could pose a danger to the police. Although appellant did not run when the police approached the van, he attempted to distance himself from the officers on the other side of the van. Giroux knew the behavior of crack cocaine users to be "unpredictable, combative [and] sometimes violent." The officer also knew them to use smoking devices as weapons against the police. Further, it has been recognized that "guns often accompany drugs." Sakyi, 160 F.3d at 169.

Considering these facts and circumstances in their totality, the police had a reasonable belief that appellant might be armed and dangerous, and were justified in frisking him for weapons. Therefore, the trial court did not err in denying the motion to suppress.

## B. Validity of the Indictment

Appellant argues the trial court erroneously denied his motion to dismiss and granted the Commonwealth's motion to amend the indictment. "The purpose of an indictment is to give the accused notice of the nature and character of the offense charged." Cantwell v. Commonwealth, 2 Va. App. 606, 608, 347 S.E.2d 523, 524 (1986). Regarding the requirements of an indictment, Code § 19.2-220 provides that it

> shall be a plain, concise and definite written statement, (1) naming the accused, (2) describing the offense charged, (3) identifying the county, city or town in which the accused committed the offense, and (4) reciting that the accused committed the offense on or about a certain date. In describing the offense, the indictment or information may use the name given to the offense by the common law, or the indictment or information may state so much of the common law or statutory definition of the offense as is sufficient to advise what offense is charged.

Rule 3A:6(a) states that an indictment, "in describing the offense charged, shall cite the statute or ordinance that defines the offense . . . ." Considered together, "[t]hese provisions clearly contemplate incorporation by reference of the statute or ordinance cited in the indictment." Cantwell, 2 Va. App. at 608, 347 S.E.2d at 524.

By its reference to Code § 18.2-308.2, the indictment, prior to amendment, provided appellant with notice of the nature and character of the offense with which he was charged. Appellant claimed no surprise regarding the charge he was facing, nor did he request a continuance to prepare for trial. Accordingly, the original indictment did not charge appellant with a "non-offense," as appellant claims.

Moreover, Code § 19.2-231 permits the amendment of an indictment before a determination of guilt provided the amendment does not change the character or nature of the offense. See Code § 19.2-231. This statute

> is remedial in nature and is to be liberally construed in order to achieve the laudable purpose of avoiding further unnecessary delay in the criminal justice process by allowing amendment, rather than requiring reindictment by a grand jury. The amendment, when allowed, must provide that the substantial rights of the accused are protected by informing him of the nature and character of the accusations.

Powell v. Commonwealth, 261 Va. 512, 533, 552 S.E.2d 344, 356 (2001) (citation omitted).

Because the amendment of the indictment did not change the nature and character of the offense and did not alter the elements the Commonwealth would have to prove to sustain a conviction of the charge, we hold that the amendment of the indictment and the denial of appellant's motion to dismiss did not constitute error.

C. Sufficiency of the Evidence

Appellant contends the evidence was insufficient to sustain his conviction because the knife he possessed was not of a type Code § 18.2-308.2 prohibited him from carrying in a concealed manner. We disagree.

Pursuant to Code § 18.2-308.2, it is unlawful for any previously convicted felon "to knowingly and intentionally carry about his person, hidden from common observation, any weapon described in subsection A of § 18.2-308." Code § 18.2-308(A) prohibits the concealment of "any

dirk, bowie knife, switchblade knife, ballistic knife, machete, razor . . . or . . . any weapon of like kind[.]"

In Farrakhan v. Commonwealth, 273 Va. 177, 639 S.E.2d 227 (2007), the Supreme Court of Virginia provided the framework for analysis of the issue before us.  Applying strict rules of statutory construction, the Court explained:

> Code § 18.2-308(A) includes numerous enumerated items, some of which are bladed, such as a dirk, bowie knife, switchblade knife, ballistic knife, machete, razor and a "disc" or "throwing star" or "oriental dart" "having at least two points or pointed blades." . . .  Some enumerated items are designed for fighting purposes such as a dirk, bowie knife, or switchblade knife.  Other enumerated items are not designed for fighting purposes, such as a machete or a razor, but unfortunately are now commonly understood to be "weapons."
>
> If the bladed item in question meets the definition of an enumerated item within Code § 18.2-308(A), the evidence is clearly sufficient for a conviction under the statute.  Additionally, if the bladed item is not enumerated, concealment of the item may be proscribed by Code § 18.2-308(A) if it is a "weapon of like kind."  However, before examination of similar physical characteristics to enumerated items, the item in question must first be a "weapon."

Id. at 182, 639 S.E.2d at 230.

Giroux described the bladed item seized from appellant as a butterfly knife or balisong. Neither of these items is specifically included within Code § 18.2-308(A).  Thus, we must first determine whether the knife found in appellant's possession was a "weapon."[1]  See Harris v. Commonwealth, 274 Va. 409, 415, 650 S.E.2d 89, 91 (2007) (upon concluding a box cutter was not an enumerated item in Code § 18.2-308(A), Court then considered whether the device was a "weapon").

---

[1] Although this Court in Delcid v. Commonwealth, 32 Va. App. 14, 526 S.E.2d 273 (2000), held a butterfly knife to be a "weapon" under the statute, that decision preceded the Supreme Court's decision in Farrakhan, and did not employ its analytic framework.

"[I]n order to be a 'weapon' within the definition of 'weapon of like kind,' the item must be designed for fighting purposes or commonly understood to be a 'weapon.'" Farrakhan, 273 Va. at 182, 639 S.E.2d at 230.

> Generally, a weapon is "[a]n instrument of offensive or defensive combat: something to fight with." Delcid [v. Commonwealth], 32 Va. App. [14,] 17, 526 S.E.2d [273,] 275 [(2000)] (citing Webster's New Collegiate Dictionary 1326 (1977)). Because a bladed instrument may be "possessed and used for non-aggressive as well as aggressive purposes," determining whether the knife "is an implement or a weapon requires consideration not only of the physical character of the instrument itself, but also of the circumstances surrounding its possession and use." Id. at 19, 526 S.E.2d at 275.

Gilliam v. Commonwealth, 49 Va. App. 508, 514, 642 S.E.2d 774, 777 (2007). "Because an offense under Code § 18.2-308.2 is 'possessory' in nature, it is committed upon concealment." Farrakhan, 273 Va. at 182, 639 S.E.2d at 230. "[O]n appeal, if there are facts to support the trial court's conclusion that the knife is . . . a 'weapon of like kind,' we are bound by that conclusion." Gilliam, 49 Va. App. at 513-14, 642 S.E.2d at 777.

The knife found in appellant's possession had a split handle that opened to expose the blade. The four-inch blade had a sharp edge and a blunt edge, and could be opened and readied for use with one hand. Referring to the knife as either a butterfly knife or a balisong, Giroux testified he had "found them frequently on gang members." Further testifying on the basis of his experience as a defensive tactics instructor for the Arlington Police Department, Giroux stated: "[I]n some of my training [in defensive tactics] we discuss a variety of edge weapons because edge weapons are very dangerous for police officers, due to the fact that they are easily concealed, and specifically ones like this that only require one hand to operate are very dangerous."

Although Giroux did not explain or define the term "balisong," a balisong's design as a fighting instrument, or weapon, intended for combat has been recognized. In Taylor v.

McManus, 661 F. Supp. 11 (E.D. Tenn. 1986), the federal court addressed whether balisong knives were switchblades and, thus, not lawfully imported. The court observed:

> The subject knife of this lawsuit, the Balisong or "butterfly" knife, originated in the Philippines several hundred years ago. Although varied in style and design, the Balisong is basically a folding knife with a split handle. In the closed position, the two halves of the handle enclose the blade. To open the knife, the two halves are folded back until they meet and are then secured by a clasp. U. S. Customs Ruling of September 28, 1982. While the exotic knife has some utilitarian use, it is most often associated with the martial arts and with combat. See, Donald S. Bitanga, The Butterfly Manual, "Foreword", p. 6. Light and maneuverable, the Balisong can be opened very rapidly, perhaps in less than five seconds, by a skilled practitioner . . . . Undoubtedly, then, these knifes are potentially dangerous, lethal weapons.

Id. at 13.

The evidence in this case supports the conclusion that the knife in question was a "weapon" within the meaning of Code § 18.2-308.2.[2] The type of knife appellant concealed in his pocket was a bladed instrument designed for fighting purposes. Giroux testified that such knives posed a hazard to police officers performing their duties, and he had seized similar devices from gang members. Regardless of appellant's claim that he had possessed the knife in the course of his work as an auto mechanic, the trial court was entitled to reject his testimony. See Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).

"Upon establishing that the item in question is a 'weapon,' we turn to whether the item possesses such similar characteristics to the enumerated items in the Code § 18.2-308(A) such that its concealment is prohibited." Farrakhan, 273 Va. at 182, 639 S.E.2d at 230.

---

[2] Whether a butterfly or balisong knife is a "weapon," the concealment of which was prohibited under Ohio law, was considered by the Court of Appeals of Ohio in City of Columbus v. Dawson, 501 N.E.2d 677, 679 (Ohio Ct. App. 1986). In Dawson, a weapons expert described the knife in question as a "balisong fighting knife, commonly known as a butterfly knife[.]" The Ohio appellate court affirmed the trial court's finding that the knife was designed as a weapon, and affirmed the conviction. Id.

Code § 18.2-308(A) provides that any weapon "of like kind" to those enumerated in the statute are likewise prohibited under the statute. Generally, the word "like" is defined as "alike, similar, analogous, or comparable." Webster's Third New International Dictionary 1310 (1993). It does not mean "*exactly* like or *identical* to." . . . [T]he statute contemplates that some "weapons" will resemble those specifically delineated in the statute, but will in fact have some different characteristics.

Gilliam, 49 Va. App. at 516, 642 S.E.2d at 778.

The trial court found the physical characteristics of appellant's knife were the same as the "butterfly knife" described in Delcid, 32 Va. App. at 17, 526 S.E.2d at 274, as having

a single blade with a two-part hinged handle, which folds to enclose the blade. A person holding one part of the closed handle can flip the other part open, leaving the blade exposed and locked, thus creating a straight-bladed knife approximately nine inches long. The blade is four inches long, with a sharp point. One edge of the blade is sharpened. The other is not.

This Court found the knife described was "useful as a weapon of like kind to a dirk. Its fixed blade, sharp point, and single-sharpened edge afford unquestionable utility as a stabbing weapon, useful in the same manner as a dagger, stiletto, or dirk." Id. at 18, 526 S.E.2d at 275. Because the knife possessed similar physical characteristics to a dirk, the Court concluded that Code § 18.2-308.2 prohibited its concealment. Id.

The facts support the trial court's conclusion that appellant's knife, which closely resembled the knife in Delcid, was a "weapon of like kind" to a "dirk." See id. Therefore, Virginia law prohibited appellant from carrying the knife in a concealed manner, and the evidence was sufficient to prove beyond a reasonable doubt that appellant was guilty of violating Code § 18.2-308.2.

## III. CONCLUSION

For these reasons, we affirm the judgment of the trial court.

Affirmed.