COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff, Judges Alston and Russell
Argued at Alexandria, Virginia


GEMBER BONILLA

v.        Record No. 0424-17-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE WESLEY G. RUSSELL, JR.
FEBRUARY 20, 2018


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Nolan B. Dawkins, Judge[1]

Kimberly C. Stover, Assistant Public Defender, for appellant.

Rosemary V. Bourne, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Gember Bonilla ("appellant") was convicted by a jury for robbery in violation of Code

§ 18.2-58.  On appeal, he argues the trial court erred in denying his motion to suppress evidence that

was obtained as a result of a warrantless stop.[2]  For the reasons stated below, we affirm the

judgment of the trial court.

BACKGROUND

Under settled principles, we address the legal issues arising from a suppression motion "only

after the relevant historical facts have been established."  Logan v. Commonwealth, 47 Va. App.

168, 171, 622 S.E.2d 771, 772 (2005) (*en banc*).  On appeal, we are "bound by the trial court's

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The final order of conviction was entered by Judge Dawkins, but the motion to suppress
was denied by Judge Lisa B. Kemler.

[2] Appellant raised several other issues in his petition for appeal, but those were denied by
*per curiam* order dated August 16, 2017.

findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*). We "consider the facts in the light most favorable to the Commonwealth, the prevailing party at trial." Malbrough v. Commonwealth, 275 Va. 163, 168, 655 S.E.2d 1, 3 (2008). Further, when addressing suppression issues, "an appellate court reviews not only the evidence presented at the pretrial hearing but also the evidence later presented at trial." Commonwealth v. White, 293 Va. 411, 414, 799 S.E.2d 494, 495 (2017).

So viewed, the evidence shows that on the evening of April 18, 2016, Syed Ali was engaged as a taxi driver. He stopped to pick up two men in downtown Alexandria and began to drive them to their requested destination. A few blocks later, the men demanded that Ali pull over. One of the men put a gun to Ali's head and commanded that Ali give them his money. Ali complied, and the two men departed southbound on Patrick Street. At approximately 9:44 p.m., Ali called 911 to report the robbery. Based on Ali's report, the dispatcher put out a "be on the lookout" or BOLO message for "two Hispanic males with a black shirt, black hat. They ran southbound on Patrick."[3]

Officer Carlos Rolon of the K-9 unit of the Alexandria Police Department was a few blocks away in his marked vehicle and responded to the call. About a minute later, as he was driving, Rolon observed a Hispanic man crossing the street midblock diagonally. He then saw a second Hispanic man still on the sidewalk, "following" the first man; they were about six feet apart.[4] The area was illuminated by streetlights. The two men were headed away from Rolon and in a direction

---

[3] In the proceedings below, appellant stipulated that the information relayed by the dispatcher regarding the robbery, including that it was perpetrated by two Hispanic males who fled southbound on Patrick Street, was reliable.

[4] At the suppression hearing, Rolon's testimony differed in that he initially said he observed the suspects three to five minutes after receiving the dispatch and that the men were 10-15 feet apart when he first saw them. The discrepancies were raised at trial and considered by

away from the scene of the robbery. The man in front was wearing a white tank top, which was characterized in testimony as being like an undershirt. Rolon saw no other people, Hispanic or otherwise, in the area at the time. Rolon testified that the neighborhood was predominately populated by a mixture of whites and African-Americans and that Hispanics generally lived five to six blocks north of the immediate area.

Rolon got closer to the men and pulled up in his vehicle. Rolon stopped his vehicle, announced his presence, and asked the men to stop. He also identified himself as a K-9 officer and indicated he could send his dog if necessary. The first man sprinted away. The second man, later identified as appellant, stopped. Appellant was wearing a white tank top and blue jeans. When Rolon reached appellant between some parked cars, Rolon grabbed both of appellant's arms with one of his arms. Rolon watched the other man run around the corner and then heard a gunshot coming from that direction. At that time, Rolon placed appellant in handcuffs and called for backup, which arrived a few minutes later. Rolon never drew his gun, keeping it in the holster during the encounter. Upon cross-examination, Rolon acknowledged that he had observed no signaling or communication between the men, and no indicia of nervousness, such as sweating, hiding, or failing to stop when asked. Rolon further acknowledged that bus and trolley stops are located in the general vicinity.

Officers Alexander Jensen and Roger Powell arrived at the scene. Jensen took appellant from Rolon. At trial, Rolon testified that he then deployed his canine to track the first suspect. Rolon further testified that he saw an item between the cars by appellant's feet. On cross-examination, Rolon acknowledged he did not observe appellant remove or drop any clothing or any other items, nor did he otherwise note what appellant was wearing. Rolon and Powell went

the factfinder. Because we consider the evidence in the light most favorable to the Commonwealth as the prevailing party at trial and the trial court did not reject the trial testimony as incredible, our analysis must assume that the trial testimony is accurate.

to look for the other suspect, leaving Jensen to keep appellant secure. Appellant made no statements while Rolon was with him. At trial, Jensen testified that he found a black cap, a black button-down shirt, and a black t-shirt between appellant's feet.

Appellant filed a motion to suppress seeking suppression of all evidence he maintains was obtained as a result of his illegal seizure, including but not limited to the confession he gave officers shortly after he was detained.

At the hearing on the motion, appellant asserted, "this was an illegal detention from the officer." Appellant argued that there was no suspicion individualized to appellant and that Rolon "should have walked up and had a consensual encounter." In response, the Commonwealth asked the trial court to consider the totality of the circumstances, to include that what the officer observed matched the BOLO in number, gender, and race, the proximity in time and location of the men to the scene of the crime, the men's direction of travel, the actions of the other man, and the need to ensure officer safety.

The trial court denied the motion to suppress, finding that Rolon "had a reasonable basis to suspect that [appellant] and the other individual . . . may have been involved in the robbery, which occurred a block and a half from where he encountered [appellant], within minutes of the crime." The court further found that probable cause was not required and denied the motion on those grounds as well.

On appeal, appellant contends the trial court erred in denying his motion to suppress because Rolon lacked reasonable articulable suspicion particularized to appellant to support an investigatory stop. Alternatively, appellant argues that the steps Rolon took to effectuate the stop transformed the encounter into a custodial arrest without sufficient probable cause.

ANALYSIS

I.  The Fourth Amendment and the Standard of Review

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures . . . ." U.S. Const. amend. IV.  Although consensual police-citizen encounters do not implicate the Fourth Amendment, Iglesias v. Commonwealth, 7 Va. App. 93, 99, 372 S.E.2d 170, 173 (1988), non-consensual encounters that involve some restriction of liberty do.

Warrantless, non-consensual encounters are often divided into two basic categories.  The first are known as Terry stops, which "are brief investigatory stops which must be based on specific and articulable facts which, taken together with rational inferences from these facts, reasonably warrant a limited intrusion." Id.  The second "are highly intrusive, full-scale arrests, which must be based on probable cause." Id.

When a seizure, whether a Terry stop or a full-blown warrantless arrest, is challenged on Fourth Amendment grounds, we are faced with a mixed question of law and fact. Lawson v. Commonwealth, 55 Va. App. 549, 554, 687 S.E.2d 94, 96 (2010) (recognizing that "ultimate questions of reasonable suspicion and probable cause . . . involve questions of both law and fact" (internal quotation marks and citation omitted)).  Thus, in conducting our review of such questions, "we give deference to the factual findings of the trial court but independently decide whether, under the applicable law, the manner in which the challenged evidence was obtained satisfies constitutional requirements." Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004) (citation omitted).

II.  Reasonable Articulable Suspicion and the Initial Stop

As noted above, police, consistent with the Fourth Amendment, may "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is

afoot." Bass v. Commonwealth, 259 Va. 470, 474-75, 525 S.E.2d 921, 923 (2000) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)). "Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." Navarette v. California, 134 S. Ct. 1683, 1687 (2014) (internal citation omitted). To have reasonable suspicion, a police officer need only have a "'minimal level of objective justification' for making . . . a stop." Branham v. Commonwealth, 283 Va. 273, 280, 720 S.E.2d 74, 78 (2012) (quoting I.N.S. v. Delgado, 466 U.S. 210, 217 (1984)). Although the reasonable suspicion must be "particularized" to the person or persons stopped, Whitfield v. Commonwealth, 265 Va. 358, 361, 576 S.E.2d 463, 465 (2003), the standard is such that reasonable suspicion "need not rule out the possibility of innocent conduct," United States v. Arvizu, 534 U.S. 266, 277 (2002).

In determining whether a police officer had the "minimal level of objective justification" to justify a Terry stop, we consider the totality of the circumstances. Bland v. Commonwealth, 66 Va. App. 405, 414, 785 S.E.2d 798, 802 (2016). In doing so, we take into account a police officer's "experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" Arvizu, 534 U.S. at 273 (quoting United States v. Cortez, 449 U.S. 411, 418 (1981)). Our analysis, however, is limited to the "facts available to the officer at the moment of the seizure," Terry, 392 U.S. at 21-22, and does not take into account information learned after the person has been detained.[5]

---

[5] Accordingly, the black hat and black clothing found at appellant's feet after Rolon stopped him and his subsequent confession cannot provide justification for the stop.

Viewed in the light most favorable to the Commonwealth, the evidence establishes that Rolon knew that two Hispanic men recently had committed an armed robbery. He knew the perpetrators had headed south after committing the offense. He encountered appellant and his companion, both Hispanic and male, in the vicinity of the offense heading in the direction that the perpetrators had taken. No other people, Hispanic or otherwise, were where he encountered the two. They were travelling together with appellant "following" his companion. Based on Rolon's familiarity with the composition of the neighborhood, he knew that it was predominantly white and African-American. All of this occurred around 10:00 at night as opposed to the middle of the day, when additional people would be expected to be in the area.

Individually, each of these facts had a potentially innocent explanation, and, even if taken together, these facts would be insufficient to establish conclusively that appellant and his companion committed the robbery. However, we do not review the facts individually, and, as noted above, reasonable articulable suspicion requires less than probable cause, let alone conclusive proof. Navarette, 134 S. Ct. at 1687.

Taken together, however, these facts would have given an objective officer a reasonable suspicion that the two may have been involved in the robbery. The two men Rolon encountered matched the perpetrators in sex, number, and national origin/race. Appellant and his companion were the only people Rolon encountered, and they were in the vicinity of the robbery a short time after its commission, tying them to the offense in terms of both time and place. The crime and encounter occurred at night after normal business hours. This type of information is precisely the type of information that courts have found to give rise to an officer's reasonable suspicions. See, e.g., Miller v. Commonwealth, 16 Va. App. 977, 980, 434 S.E.2d 897, 899 (1993) (recognizing that "reasonable, articulable suspicion" may be based upon "characteristics of the area where the stop occurs, the time of the stop, . . . proximity to the scene of a crime and racial

identity" (internal quotation marks and citations omitted)); Lowery v. Commonwealth, 9 Va. App. 314, 318, 388 S.E.2d 265, 267 (1990) (noting "that a person's apparent national origin may be relevant in some circumstances to justify, in part, an investigatory stop"); Wells v. Commonwealth, 6 Va. App. 541, 552, 371 S.E.2d 19, 25 (1988) (recognizing that the racial description of a suspect given to officer may be a factor in providing reasonable suspicion even when the officer is not provided a description "of the suspect's wearing apparel, age, weight, height, or hair color or style"); and United States v. Moore, 817 F.2d 1105, 1107 (4th Cir. 1987) (finding that suspect being found, at night, in the vicinity of the crime minutes after its commission with the suspect being the only person in area without *any* physical/racial description of suspect was sufficient to provide reasonable suspicion). Although the facts suggesting some connection between appellant and the robbery could have been the result of coincidence or mere happenstance, the totality of the facts was sufficient to provide an objective officer with reasonable suspicion, particularized to appellant and his companion, that the two men Rolon encountered were involved in the robbery that had just occurred a short distance away. Accordingly, Rolon was justified in stopping them to allow further investigation.[6]

In arguing the contrary, appellant focuses on the one piece of information that Rolon had about the suspects that did not match appellant or his companion. The dispatch had indicated that one or both of the suspects was wearing "a black shirt [and] black hat." Appellant argues that,

_____

[6] In concluding that the race or national origin of a suspect may be a factor in establishing reasonable, articulable suspicion, we stress that it cannot be the only factor. A hunch that the crime must have been committed by a person of a particular race or ethnicity without any additional supporting facts cannot give rise to reasonable suspicion. Moreover, the fact that a person is walking in an area where other races or ethnicities form the majority of the neighborhood also is insufficient to give rise to reasonable suspicion unless additional facts support such suspicion. When, as here, there is a reliable report that the crime has been committed by a person of a particular race or ethnicity, the suspect's race or ethnicity becomes material and can be considered with other factors to determine if reasonable, articulable suspicion exists.

because neither of the two companions was wearing a black hat or a black shirt when Rolon first saw them, an objective officer in Rolon's position could not have formed reasonable suspicion regarding appellant.

Although the fact that appellant and his companion were not wearing the clothes that the perpetrators had been reported as wearing when the robbery was committed is a factor to consider in determining whether there was reasonable suspicion to initiate an investigatory stop, it is only one factor and is far from decisive. An objective, ordinary citizen applying common sense and experience, let alone a trained police officer, easily could conclude that the perpetrators of a robbery might discard any potentially identifying clothing as they fled the scene of the crime.[7] Accordingly, the fact that the clothing description did not match what appellant and his companion were wearing when Rolon first encountered them does not negate all of the other facts that combined to give rise to the reasonable suspicion that appellant and his companion may have committed the robbery.

In summary, based on the totality of the information he possessed, Rolon had reasonable articulable suspicion, particularized to appellant, that appellant and his companion may have committed the robbery. As a result, Rolon, consistent with the Fourth Amendment, was entitled to stop appellant so that he could investigate further. Accordingly, we affirm the circuit court's ruling on this aspect of the motion to suppress.

### III. Probable Cause was not Required for the Stop Under these Circumstances

Appellant offers an alternative argument, asserting that Officer Rolon's reference to "his dog and physical restraint of [a]ppellant elevated the Terry stop to an arrest" for which Rolon lacked the necessary probable cause. Although an arrest does require probable cause, Iglesias, 7

---

[7] This especially is true if one of the suspects is described as wearing a mere undershirt when police first encounter him.

Va. App. at 99, 372 S.E.2d at 173, we disagree that Rolon's actions during the stop converted the encounter from a Terry stop to a custodial arrest.

Although not full custodial arrests, stops based on reasonable suspicion definitionally involve some restriction on liberty—they are, after all, stops. "During Terry stops, the police are permitted to use methods of restraint that are reasonable under the circumstances." Harris v. Commonwealth, 27 Va. App. 554, 563, 500 S.E.2d 257, 261 (1998). As the United States Court of Appeals for the Fourth Circuit has observed, "[a] brief but *complete* restriction of liberty is valid under Terry. Courts have held that a lawful stop does not necessarily become a custodial arrest when circumstances cause police officers to draw their guns; use force or threats of force; or handcuff suspects." Moore, 817 F.2d at 1108 (emphasis added) (internal citations omitted); see also Thomas v. Commonwealth, 16 Va. App. 851, 857, 434 S.E.2d 319, 323 (1993), pertinent analysis adopted en banc, 18 Va. App. 454, 444 S.E.2d 275 (1994).

Appellant first argues that Rolon's reference to the potential release of his police dog was such that the encounter became an arrest.[8] We disagree.

Rolon was a single officer approaching two people he reasonably suspected had just committed a violent crime, specifically an armed robbery. It was nighttime, and the three were the only people on the street. Rolon initiated contact by asking the two men to "please stop" and referenced his police dog only after issuing the request. Furthermore, Rolon did not draw his gun. Given all of these facts and the potential threat to officer safety, Rolon's request that the men "please stop" and the subsequent reference to his police dog were "reasonable under the circumstances," Harris, 27 Va. App. at 563, 500 S.E.2d at 261, and did not convert a legitimate investigatory stop into a custodial arrest.

---

[8] The record reveals that the dog was not released when Rolon first encountered appellant.

Appellant next argues that the fact that Rolon grabbed appellant when he first made physical contact and subsequently handcuffed appellant converted the Terry stop into a custodial arrest. Once again, we disagree.

When Rolon first reached appellant, all of the factors noted above were still present. Rolon was still a single officer encountering two men suspected of armed robbery at night with no other people present. Adding to the danger posed by the situation, the first suspect ran out of Rolon's view, making it impossible for him to see both suspects at once. Accordingly, it was entirely reasonable for Rolon to take hold of appellant under the circumstances. Rolon only handcuffed appellant when an additional threat became apparent—he heard a gunshot from the direction that appellant's companion ran.[9] Under such circumstances, it was wholly reasonable for Rolon to handcuff appellant, call for back up, and wait for assistance to arrive.

As noted above, courts have approved far more intrusive and threatening actions to effectuate an investigatory stop, including the drawing of weapons and the use of force. See, e.g., Moore, 817 F.2d at 1108. Because Rolon's actions in effectuating the stop were reasonable under the circumstances," Harris, 27 Va. App. at 563, 500 S.E.2d at 261, they did not convert a legitimate investigatory stop into a custodial arrest. Accordingly, the trial court correctly denied appellant's motion to suppress in this regard.

CONCLUSION

The totality of the circumstances supports the conclusion that, when he stopped appellant, Rolon possessed reasonable, articulable suspicion that appellant had been involved in the armed robbery. Moreover, the actions Rolon took to effectuate the stop were reasonable under the

---

[9] That Rolon, despite hearing the gunshot, never drew his service weapon demonstrates that Rolon was relatively restrained in his approach.

- 11 -

circumstances and did not convert the investigatory stop into a custodial arrest.  Accordingly, we affirm the judgment of the trial court.

Affirmed.